# 25-60102

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA

*Plaintiff-Appellant*

v.

JUSTIN BRYCE BROWN

*Defendant-Appellee*

FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
3:23cr123CWR-ASH

## BRIEF OF APPELLANT

PATRICK A. LEMON
*Acting United States Attorney*
*Southern District of Mississippi*

JENNIFER CASE
Mississippi Bar Number 104238

SAMUEL GOFF
Mississippi Bar Number 105813
*Assistant United States Attorneys*
501 E. Court Street, Suite 4.430
Jackson, Mississippi 39201
(601) 965-4480

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not request oral argument.  The question on appeal—whether 18 U.S.C. § 922(o) is constitutional as applied to a person who possesses a machinegun unlawfully—is settled by binding Circuit precedent and can be considered fully by relying on the record and the briefs. *See* FED. R. APP. P. 34(a)(2)(C); FIFTH CIR. R. 28.2.3.

# TABLE OF CONTENTS

PAGE

STATEMENT REGARDING ORAL ARGUMENT.......................................... ii

TABLE OF AUTHORITIES................................................................... iv

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF THE ISSUE ............................................................. 2

STATEMENT OF THE CASE................................................................ 2

A.  While Investigating Brown's Receipt of Many Transnational
    Shipments of Suspected Machine Conversion Devices, Agents
    Find a Machinegun in Brown's Home....................................... 3

B.  Brown Seeks Dismissal of the Indictment Charging him
    with Unlawfully Possessing a Machinegun ............................. 6

SUMMARY OF THE ARGUMENT.................................................... 8

ARGUMENT..................................................................................... 10

    The District Court Erred by Holding that 18 U.S.C. § 922(o)
    Is Unconstitutional .................................................................. 10

A.  Standard of Review ................................................................ 10

B.  Legal Principles...................................................................... 11

C.  Discussion .............................................................................. 12

    1.  As this Court Has Held, Machineguns Are Not
        Arms Protected under the Second Amendment......................... 12

    2.  Section 922(o) Does Not Violate the Second Amendment ........ 17

CONCLUSION .................................................................................. 42

CERTIFICATE OF SERVICE ............................................................. 1

CERTIFICATE OF COMPLIANCE .................................................... 2

# TABLE OF AUTHORITIES

**Federal Cases**                                                         PAGE

*Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023) ...................... 11, 24, 26

*Bezet v. United States*, 714 Fed.Appx. 336 (5th Cir. 2017) .................................12

*Caetano v. Massachusetts*, 577 U.S. 411 (2016).......................................19

*Cox v. United States*, 2023 WL 4203261 (D. Ala. 2023) ......................................41

*DeWilde v. Attorney General*, 2024 WL 4643681 (D. Wyo. 2024) ......................41

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................passim

*Friedman v. City of Highland Park*, 577 U.S. 1039 (2015) ...................................27

*Hamblen v. United States*, 591 F.3d 471 (6th Cir. 2009)......................................23

*Haynes v. United States*, 390 U.S. 85 (1968) .........................................22

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016)................................................passim

*In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787 (5th Cir. 2021) ........... 13, 15, 16

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ........................................10

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ................................................15

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) .......passim

*Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024)...............27

*United States v. Alcantar*, 733 F.3d 143 (5th Cir. 2013) ............................... 13, 15

*United States v. Alsenat*, 734 F.Supp.3d 1295 (S.D. Fla. 2024)...........................41

*United States v. Bachmann*, 2024 WL 730489 (M.D. Fla. 2024).........................41

*United States v. Barrow*, 2024 WL 3814041 (N.D. Ga. 2024) .............................41

*United States v. Berger*, 715 F.Supp.3d 676 (E.D. Pa. 2024)...............................41

*United States v. Berríos-Aquino*, 2024 WL 1468488 (D.P.R. 2024) ....................41

*United States v. Brown*, 2024 WL 4241959 (D.S.C. 2024) ...................................41

## TABLE OF AUTHORITIES (cont'd)

**Federal Cases (cont'd)**                                                                    PAGE

*United States v. Caldwell*, 2024 WL 2784340 (N.D. Ohio 2024)........................41

*United States v. Chan*, 2024 WL 4028019 (D. Haw. 2024)................................41

*United States v. Cooperman*, 2023 WL 4762710 (N.D. Ill. 2023) .......................41

*United States v. Cousar*, 2024 WL 1406898 (D. Kan. 2024) ...............................41

*United States v. Delafose*, 2023 WL 7368239 (W.D. La. 2023) ...........................41

*United States v. Dixon*, 2023 WL 2664076 (N.D. Ill. 2023) ................................41

*United States v. Elliott*, 2024 WL 3161879 (E.D. La. 2024) ................................41

*United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008) ........................................23

*United States v. Fisher*, 2024 WL 589115 (W.D.N.C. 2024) ...............................41

*United States v. Hart*, 2024 WL 893335 (D. Minn. 2024)...................................41

*United States v. Henry*, 688 F.3d 637 (9th Cir. 2012) ...................................23,.26

*United States v. Hernandez*, 721 F.Supp.3d 310 (D. Del. 2024).........................41

*United States v. Hicks*, 2024 WL 1840326 (W.D. La. 2024)................................41

*United States v. Jackson*, 2024 WL 1160304 (N.D. Miss. 2024) .........................41

*United States v. Jennings*, 195 F.3d 795 (5th Cir. 1999) ......................................22

*United States v. Johnson*, 2024 WL 4612888 (E.D. Mich. 2024).........................41

*United States v. Kelley*, 2024 WL 264588 (D. Minn. 2024) ................................41

*United States v. Kenney*, 91 F.3d 884 (7th Cir. 1996) ..........................................39

*United States v. Kirk*, 105 F.3d 997 (5th Cir. 1997)..............................................26

*United States v. Kittson*, 2023 WL 5015812 (D. Or. 2023) ................................41

*United States v. Lane*, 689 F.Supp.3d 232 (E.D. Va. 2023) .......................... 25, 41

# TABLE OF AUTHORITIES (cont'd)

**Federal Cases (cont'd)** PAGE

*United States v. Lopez*, 2 F.3d 1342 (5th Cir. 1993) ...............................26

*United States v. Miller*, 307 U.S. 174 (1939) ........................................... 18, 20, 22

*United States v. Mitchell*, 734 F.Supp.3d 702 (N.D. Ohio 2024).......................41

*United States v. Morgan*, No. 24-3141 (10th Cir.) ...............................23

*United States v. O'Brien*, 560 U.S. 218 (2010) ........................................26

*United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136 (3d Cir. 2016) .....................................23

*United States v. Perez-Macias*, 335 F.3d 421 (5th Cir. 2003)..............................10

*United States v. Rahimi*, 602 U.S. 680 (2024)................................................passim

*United States v. Schnur*, 132 F.4th 863 (5th Cir. 2025).......................................11

*United States v. Simien*, 655 F.Supp.3d 540 (W.D. Tex. 2023)................... 25, 41

*United States v. Smith*, 2023 WL 6880423 (E.D. Ky. 2023) ................................41

*United States v. Sturgeon*, 2023 WL 6961618 (E.D. Ky. 2023) ...........................41

*United States v. Williams*, 2024 WL 308460 (N.D. Ill. 2024)..............................41

*United States v. Wilson*, 2023 WL 8288989 (W.D. Tenn. 2023).........................41

*United States v. Wilson*, 2024 WL 1144251 (N.D. Tex. 2024)..................... 25, 41

*United States v. Zaleski*, 489 Fed.Appx. 474 (2d Cir. 2012) ...............................23

# TABLE OF AUTHORITIES (cont'd)

**Federal Statutes, Laws, and Legislative Authority**        PAGE

18 U.S.C. § 3231 ..................................................................................2

18 U.S.C. § 3731 ..................................................................................2

18 U.S.C. § 921 ............................................................................. 5, 11

18 U.S.C. § 922 ...........................................................................passim

26 U.S.C. § 5801 ................................................................................38

26 U.S.C. § 5802 ................................................................................38

26 U.S.C. § 5811 ......................................................................... 38, 39

26 U.S.C. § 5812 ................................................................................38

26 U.S.C. § 5821 ................................................................................38

26 U.S.C. § 5822 ................................................................................38

26 U.S.C. § 5841 ................................................................................38

26 U.S.C. § 5842 ................................................................................38

26 U.S.C. § 5845 ................................................................... 5, 11, 38

28 U.S.C. § 1291 ..................................................................................2

Firearm Owners' Protection Act, Pub. L. No. 99-308, § 102,
    100 Stat. 449 (1986) ...................................................................38

H.R. Rep. No. 83-1337 (1954) .........................................................27

H.R. Rep. No. 99-495 (1986) ...........................................................27

S. Rep. No. 73-1444 (1934) ..............................................................38

S. Rep. No. 90-1501 (1968) ..............................................................22

U.S. Const. amend. II ........................................................................17

## State Statutes, Laws, and Authority

18 Pa. Cons. Stat. § 908 ............................................................................28

720 Ill. Comp. Stat. 5/24-1 .......................................................................28

Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts ...................................35

Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws ...........................37

Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws ................. 35, 36

Act of Apr. 15, 1931, ch. 435, § 1, 1931 N.Y. Laws .............................37

Act of Apr. 16, 1881, § 1, 1881 Ill. Laws ...............................................36

Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts .............................37

Act of Apr. 21, 1915, ch. 133, § 17, 1915 N.H. Laws ..........................36

Act of Apr. 22, 1875, No. 97, § 1, 1875 Mich. Pub. Acts....................36

Act of Apr. 22, 1927, ch. 1052, § 4, 1927 R.I. Pub. Laws...................37

Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws ..............................37

Act of Apr. 27, 1927, ch. 326, § 1, 1927 Mass. Acts ...........................37

Act of Apr. 29, 1929, ch. 190, § 1, 1929 Neb. Laws ............................37

Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws ..............................36

Act of Apr. 7, 1886, ch. 375, § 1, 1886 Md. Laws ...............................35

Act of Apr. 8, 1933, No. 64, 1933 Ohio Laws ......................................37

Act of April 16, 1881, § 4, 1881 Ill. Laws..............................................35

Act of Aug. 6, 1868, No. 13, ch. 1637, ch. 7, § 11, 1868 Fla. Laws ....................36

Act of Dec. 24, 1880, No. 362, § 1, 1880 S.C. Acts ..............................35

Act of Dec. 25, 1837, § 1, 1837 Ga. Laws..............................................35

Act of Dec. 27, 1873, ch. 226, § 168, 1872 W. Va. Acts ......................35

# TABLE OF AUTHORITIES (cont'd)

**State Statutes, Laws, and Authorities (cont'd)**          PAGE

Act of December 21, 1771, ch. 540, § 10, 1771 N.J. Laws ...................................36

Act of Feb. 1, 1881, § 1, 1881 Colo. Laws .........................................................35

Act of Feb. 11, 1925, ch. 31, § 1, 1925 Or. Laws .................................................36

Act of Feb. 15, 1872, ch. 7, § 1, 1872 Wis. Laws .................................................35

Act of Feb. 16, 1875, § 1, 1875 Ark. Acts ..................................................... 35, 36

Act of Feb. 18, 1885, § 1, 1885 Or. Laws ...........................................................35

Act of Feb. 2, 1838, ch. 101, § 1, 1838 Va. Acts .................................................35

Act of Feb. 23, 1859, ch. 78, § 1, 1859 Ind. Laws ...............................................35

Act of Feb. 25, 1869, ch. 33, § 1, 1869 Wis. Laws ..............................................36

Act of Feb. 25, 1931, ch. 249, § 1, 1931 Del. Laws .............................................37

Act of Feb. 25, 1931, No. 58, § 1, 1931 S.C. Acts ................................................36

Act of Feb. 27, 1869, ch. 39, § 1, 1869 Minn. Laws .............................................36

Act of Feb. 28, 1878, ch. 46, § 1, 1878 Miss. Laws ..............................................35

Act of Feb. 28, 1933, ch. 206, §§ 1-5, 1933 S.D. Laws ........................................37

Act of Jan. 27, 1838, ch. 137, § 1, 1838 Tenn. Pub. Acts .....................................35

Act of Jan. 29, 1795, ch. 2, 1795 Mass. Acts .......................................................34

Act of Jan. 6, 1841, Penal Code, ch. 7, § 4, 1840 Ala. Laws ...............................35

Act of July 2, 1931, § 2, 1931 Ill. Laws ..............................................................37

Act of July 7, 1921, ch. 530, § 1, 1921 Wis. Laws ...............................................36

Act of July 7, 1932, No. 80, § 2, 1932 La. Acts ...................................................37

Act of June 1, 1929, H.B. 498, § 1, 1929 Mo. Laws ............................................37

ix

# TABLE OF AUTHORITIES (cont'd)

**State Statutes, Laws, and Authorities (cont'd)**    PAGE

Act of June 14, 1701, ch. 7, *in* 1 *Laws of New Hampshire*
(Albert Stillman Batchellor ed., 1904)................................................34

Act of June 16, 1931, No. 327, § 236, 1931 Mich. Pub. Acts..............................36

Act of June 2, 1893, ch. 4124, § 1, 1893 Fla. Laws ................................................35

Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts....................................37

Act of June 5, 1925, ch. 3, 1925 W. Va. Acts ................................................37

Act of Mar. 1, 1864, ch. 128, § 1, 1864 Cal. Stat.................................................35

Act of Mar. 10, 1933, ch. 315, § 3, 1933 Or. Laws ................................................37

Act of Mar. 14, 1855, No. 120, § 115, 1855 La. Acts ...........................................35

Act of Mar. 14, 1882, ch. 219, § 1, 1881 Va. Acts..................................................35

Act of Mar. 18, 1859, § 1, 1859 Ohio Laws.................................................35

Act of Mar. 19, 1927, ch. 95, § 2, 1927 N.J. Laws..................................................37

Act of Mar. 2, 1934, No. 731, §§ 2-4, 1934 S.C. Acts ..........................................37

Act of Mar. 22, 1909, ch. 249, § 266, 1909 Wash. Laws .....................................36

Act of Mar. 24, 1882, ch. 135, § 1, 1882 W. Va. Acts.................................. 35, 36

Act of Mar. 4, 1873, ch. 58, pt. 1, ch. 4, § 25, 1873 Neb. Laws ..........................35

Act of Mar. 5, 1879, ch. 127, § 1, 1879 N.C. Laws ..............................................35

Act of Mar. 6, 1852, § 103, 1851 Utah Laws........................................................36

Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws .............................................37

Act of Mar. 7, 1934, ch. 96, §§ 2-5, 1934 Va. Acts...............................................37

Act of Mar. 8, 1909, ch. 240, § 22, 1909 S.D. Laws .............................................36

# TABLE OF AUTHORITIES (cont'd)

**State Statutes, Laws, and Authorities (cont'd)**                              PAGE

Act of Mar. 9, 1927, ch. 156, § 1, 1927 Ind. Acts....................................................37

Act of Mar. 9, 1931, ch. 178, § 2, 1931 N.D. Laws.................................................37

Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat..................................................37

Act of May 24, 1879, § 1, 1879 Ill. Laws .................................................................35

Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws................................................36

Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws................................................37

Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws............................... 35, 36

Act of May 31, 1887, No. 129, § 1, 1887 Mich. Pub. Acts......................................35

Act of Nov. 1, 1692, ch. 18, § 6, *in* 1 *Acts and Resolves of the
    Province of Massachusetts Bay* (1869) .................................................................34

Act of Nov. 12, 1849, No. 36, § 2, 1849 Vt. Acts....................................................36

Act of Nov. 25, 1884, No. 76, § 1, 1884 Vt. Acts....................................................36

Act of Nov. 27, 1786, ch. 21, in *A Collection of all such Acts of the
    General Assembly of Virginia, of a Public and Permanent Nature,
    as are now in Force* (1794) .....................................................................................34

Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws.................................................37

Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws..........................................37

Alaska Stat. § 11.61.200 ............................................................................................28

Ariz. Rev. Stat. Ann. § 13-3101................................................................................28

Ariz. Rev. Stat. Ann. § 13-3102................................................................................28

Ark. Code Ann. § 5-73-204 .......................................................................................28

Ark. Code Ann. § 5-73-205 .......................................................................................28

# TABLE OF AUTHORITIES (cont'd)

**State Statutes, Laws, and Authorities (cont'd)**    PAGE

Cal. Penal Code § 32625 ...............................................................28

Colo. Rev. Stat. § 18-12-102 .......................................................28

Conn. Gen. Stat. § 53-202 ............................................................28

D.C. Code Ann. § 22-4514 ...........................................................28

Del. Code Ann. tit. 11, § 1444 ......................................................28

Fla. Stat. § 790.221 ......................................................................28

Ga. Code Ann. § 16-11-122 ..........................................................28

Ga. Code Ann. § 16-11-124 ..........................................................28

Haw. Rev. Stat. § 134-8 ...............................................................28

Ind. Code § 35-47-5-10 ................................................................28

Ind. Code § 35-47-5-8 ..................................................................28

Iowa Code § 724.1 .......................................................................28

Iowa Code § 724.3 .......................................................................28

Kan. Stat. Ann. § 21-6301 ............................................................28

La. Stat. Ann. § 40:1752 ..............................................................28

Mass. Gen. Laws ch. 140, § 131 ..................................................28

Md. Code Ann., Criminal Law § 4-403 .........................................28

Md. Code Ann., Criminal Law § 4-404 .........................................28

Md. Code Ann., Criminal Law § 4-405 .........................................28

Me. Stat. tit. 17-A, § 1051 ...........................................................28

Me. Stat. tit. 17-A, § 1052 ...........................................................28

# TABLE OF AUTHORITIES (cont'd)

**State Statutes, Laws, and Authorities (cont'd)**                           PAGE

Mich. Comp. Laws § 750.224 ..................................................................28

Minn. Stat. § 609.67 ...............................................................................28

Mo. Rev. Stat. § 571.020 .........................................................................28

N.C. Gen. Stat. § 14-409 ..........................................................................28

N.D. Cent. Code § 62.1-05-01 ..................................................................28

N.J. Stat. Ann. § 2C:39-5 .........................................................................28

N.Y. Penal Law § 265.02 ..........................................................................28

Neb. Rev. Stat. § 28-1203 ........................................................................28

Nev. Rev. Stat. § 202.350 .........................................................................28

Ohio Rev. Code Ann. § 2923.11 ...............................................................28

Ohio Rev. Code Ann. §§ 2923.17 .............................................................28

Or. Rev. Stat. § 166.272 ...........................................................................28

Penal Code, § 7094, 1895 N.D. Rev. Codes ............................................36

R.I. Gen. Laws § 11-47-8 .........................................................................28

S.C. Code Ann. § 16-23-230 .....................................................................28

S.C. Code Ann. § 16-23-250 .....................................................................28

S.C. Code Ann. § 23-31-330 .....................................................................28

S.D. Codified Laws § 22-1-2 .....................................................................28

S.D. Codified Laws § 22-14-6 ...................................................................28

*State v. Langford*, 3 Hawks 381 (N.C. 1824) .........................................35

Tenn. Code Ann. § 39-17-1302 .................................................................28

# TABLE OF AUTHORITIES (cont'd)

**State Statutes, Laws, and Authorities (cont'd)**                    PAGE

Tex. Penal Code Ann. § 46.05...................................................................28

Va. Code Ann. § 18.2-290....................................................................28

Va. Code Ann. § 18.2-291....................................................................28

Va. Code Ann. § 18.2-295....................................................................28

W. Va. Code § 61-7-9..........................................................................28

Wash. Rev. Code § 9.41.190 ................................................................28

Wis. Stat. § 941.26 .............................................................................28


**Secondary Sources and Treatises**

1 Richard Burn, *The Justice of the Peace, and Parish Officer* (2d ed. 1756)........33

1 William Hawkins, *A Treatise of the Pleas of the Crown* (1716) .......................33

4 W. Blackstone, *Commentaries on the Laws of England* (1769) .................. 18, 32

Boise State Public Radio, *Automatic weapons are legal, but it takes a lot
    to get one of the 630,000 in the U.S.* (Dec. 21, 2018) ........................................30

Bureau of Alcohol, Tobacco, Firearms and Explosives,
    *Current Processing Times* ....................................................................31

Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms
    Commerce in the United States: Annual Statistical Update 2021* .............. 24, 25

Eliphalet Ladd, *Burn's Abridgement, Or The American Justice*
    (2d ed. 1792) (N.H.)..........................................................................33

James Parker, *Conductor Generalis* (1764) (N.J.)................................................33

James Parker, *Conductor Generalis* (Robert Campbell printing 1792) (Pa.)...33

xiv

# TABLE OF AUTHORITIES (cont'd)

**Secondary Sources and Treatises (cont'd)**                    PAGE

James Parker, *Conductor Generalis* (Robert Hodge printing 1788) (N.Y.)......33

John Berrigan, *et al.*, *The Number and Type of Private Firearms in the United States*, Annals of the American Academy of Political and Social Science, Vol. 704, Issue 1 (Nov. 2022).........................................29

Joseph Greenleaf, *An Abridgment of Burn's Justice of the Peace and Parish Officer* (1773) (Mass.) ..............................................................33

*National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73d Cong. ...........................................................38

Oliver Krawczyk, *Dangerous and Unusual: How an Expanding National Firearms Act Will Spell Its Own Demise*, 127 DICKINSON L. REV. 273 (2022)............................................................ 30, 31

Pew Research Center, *Key facts about Americans and guns*..............................30

Robert J. Spitzer, *Understanding Gun Law History After* Bruen*: Moving Forward by Looking Back*, 51 FORDHAM URB. L.J. 57 (2023)..............37

Small Arms Survey, *Estimating Global Civilian-Held Firearms Numbers* (June 2018) ..........................................................................29

The Trace, *How Many Guns are Circulating in the U.S.?* ..................................29

U.S. Census Bureau, *Happy New Year 2024!* ......................................................30

W. Kip Viscusi & Kyle J. Blasinsky, *Leveraging Public Support for Gun Laws to Reduce Mass Shootings*, 2024 U. ILL. L. REV. 707 (2024) ...........38

William Waller Hening, *The New Virginia Justice* (1795) (Va.).......................33

xv

# 25-60102

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA

*Plaintiff-Appellant*

v.

JUSTIN BRYCE BROWN

*Defendant-Appellee*

FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
3:23cr123CWR-ASH

## BRIEF OF APPELLANT

## STATEMENT OF JURISDICTION

The government brings this timely appeal from the district court's

grant of Justin Brown's motion to dismiss the indictment, which charges

Brown with unlawfully possessing a machinegun, in violation of 18 U.S.C.

1

§ 922(o). ROA.83-94; R.E.4 (dismissal order).[1]  The district court had

jurisdiction. *See* 18 U.S.C. § 3231.  This Court's jurisdiction is properly

invoked. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3731.  The Solicitor General has

authorized this appeal.

## STATEMENT OF THE ISSUE

Whether the federal prohibition against machinegun possession,

18 U.S.C. § 922(o), violates the Second Amendment.

## STATEMENT OF THE CASE

Justin Brown was charged with violating 18 U.S.C. § 922(o) after he

possessed a Whore-16 rifle, which has been determined to be a

machinegun.  The district court dismissed the indictment, disregarding

binding circuit precedent and concluding that § 922(o) violates the Second

Amendment as applied to persons who possess machineguns.

Because this Court has held previously that § 922(o)'s prohibition

against machinegun possession is consistent with our nation's historical

---

[1] "ROA.83-94" refers to pages 83 to 94 of the Record on Appeal; and "R.E." to
Record Excerpt, cited by tab.

tradition of regulating dangerous and unusual weapons, the district court's order dismissing the indictment should be reversed.

## A.     While Investigating Brown's Receipt of Many Transnational Shipments of Suspected Machine Conversion Devices, Agents Find a Machinegun in Brown's Home

On April 18, 2022, U.S. Customs and Border Patrol ("CBP") agents intercepted a package that was intended for delivery to Brown at his home address in Mendenhall, Mississippi. ROA.61.  After learning that the package contained multiple machinegun conversion devices ("MCDs"), CBP agents contacted the U.S. Department of Homeland Security Investigations ("HSI"). ROA.61.  The next day, HSI learned that 55 international packages arrived at Brown's Mendenhall home between December 2013 and April 2022. ROA.61.  Forty-eight of the 55 international packages came from China and arrived between March 2017 and April 2022.[2] ROA.61-62.  One of these 48 packages is the package of machinegun conversion devices that CBP seized on April 18, 2022. ROA.62.

---

[2] Six of those 48 international packages were shipped from "Xie Fenghua X Xie" at a particular address in China and were manifested as bicycle parts (*e.g.*, "BICYCLE

Agents applied for and obtained a search warrant for Brown's home.

ROA.62.  While searching, federal agents recovered several firearms,

including a "NFA Whore, Whore-16, .300 Blackout Rifle"

(a/k/a machinegun) that looked like this:



ROA.62.

The machinegun had three separate positions for the selector switch

on the lower receiver of the firearm. ROA.63.  One selector position was

titled "MARY." ROA.63.  MARY was the safe position—meaning the

firearm would not engage the firing pin if the trigger was pulled. ROA.63.

The second selector position was titled "SLUT." ROA.63.  SLUT meant that

---

PIN PARTSMATERIALSTAINLESSU~SED FOR SAMP" and/or "BICYCLE ADAPTER
PARTSMA~TERIALSTAINLESSUSED FOR," or similar words). ROA.62.  Through related
HSI investigations into the delivery of machinegun conversion devices into the United
States from China, HSI agents knew that MCDs were often disguised as "bicycle parts"
online for purchase from overseas sellers. ROA.62.

the trigger, when engaged by a pull of the trigger, would fire a single round and function as a semiautomatic rifle. ROA.63.  The third, and problematic selector position, was dubbed "WHORE," meaning that the firearm would function as a machinegun and fire more than one round with a single pull of the trigger. ROA.63.

The lower receiver of Brown's machinegun looked like this:



ROA.63.

This gun was confirmed by ATF analysis to be a machinegun, as that term is used in 18 U.S.C. § 921(a), and, by reference, 26 U.S.C. § 5845(b). ROA.63.  The gun can fire more than one round with a single pull of the trigger. ROA.63.

**B.     Brown Seeks Dismissal of the Indictment Charging him with Unlawfully Possessing a Machinegun**

A grand jury charged Brown with unlawfully possessing a machinegun, in violation of 18 U.S.C. § 922(o). ROA.9.

Brown moved to dismiss the indictment, arguing that § 922(o) violates the Second Amendment, as applied to his possession of the machinegun, under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). ROA.55-60.  Brown argued that *Bruen*'s holding abrogated binding Fifth Circuit precedent in *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016), and, therefore, should be disregarded. ROA.58-59.

The government responded that *Bruen* did not abrogate *Hollis*, which remains binding law in this Circuit. ROA.64-67.  It also argued that § 922(o) is, in any event, consistent with the historical tradition of regulating dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes and are not "in common use" by private citizens. ROA.67-75.  The government also cited many historical bases for the constitutionality of § 922(o). ROA.70-77.

6

After concluding that § 922(o) was unconstitutional as-applied to Brown's possession of the machinegun, the district court granted Brown's motion to dismiss. *See* ROA.83-94.  To reach this result, the court stated the Fifth Circuit's holding in *Hollis*, had been abrogated and, therefore, the court could conduct a new analysis of whether machineguns were "dangerous" and "unusual." ROA.84, 88-92.  After citing a single statistic that had not been referenced by either litigant, ROA.89, the district court held that the government had not shown that machineguns are "unusual" or otherwise satisfied its burden to provide a historical analog under *Bruen*. ROA.89-92.

This appeal followed.

## SUMMARY OF THE ARGUMENT

With limited exceptions, federal law makes it unlawful to possess a machinegun. 18 U.S.C. § 922(o).  Brown was charged with violating that law after he possessed a Whore-16 blackout rifle (a/k/a machinegun).  The district court dismissed the indictment, disregarding binding precedent and concluding that § 922(o) violates the Second Amendment as applied to persons who possess machineguns.

That was error.  As the Supreme Court has recently and repeatedly affirmed, the Second Amendment applies only to firearms that are "in common use . . . for lawful purposes like self-defense" and does not apply to firearms that are "not typically possessed by law-abiding citizens for lawful purposes," such as "dangerous and unusual weapons." *District of Columbia v. Heller*, 554 U.S. 570, 624-25, 627 (2008) (quotation omitted).[3]

---

[3] *Accord New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 47 (2022) ("Drawing from this historical tradition, we [have] explained . . . that the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.' "); *United States v. Rahimi*, 602 U.S. 680, 691 (2024) ("At the founding, the bearing of arms was subject to regulations" that included "ban[s on] the carrying of 'dangerous and unusual weapons.' ").

Machineguns are not typically possessed by law-abiding citizens for lawful purposes.  Instead, they are uniformly restricted, highly lethal and well suited to criminal purposes.  Given these realities, this Court has confirmed that § 922(o)'s longstanding prohibition against machinegun possession is entirely consistent with our nation's historical tradition, recognized in *Heller*, of regulating dangerous and unusual weapons like machineguns. *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). Consequently, the Second Amendment's protections do not extend to machinegun possession.

The district court's contrary holding should be reversed.

## ARGUMENT

### The District Court Erred by Holding that 18 U.S.C. § 922(o) Is Unconstitutional

Brown's motion to dismiss argued that the federal prohibition on machinegun possession, 18 U.S.C. § 922(o), violates the Second Amendment. This Court rejected that very argument in *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). *Hollis* has not been abrogated, thus Brown's challenge to the constitutionality of § 922(o) remains foreclosed. But, even if the constitutional challenge was not foreclosed, this Court should reverse the order dismissing the indictment because § 922(o) is constitutional as-applied to those who possess machineguns.

### A.   Standard of Review

This Court reviews constitutional questions *de novo*. *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003). *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 91 (1991) (describing scope of authority to "identify and apply" the law). Because this Court's review is *de novo*, the Court conducts "an independent (*i.e.*, without deference to the district court)

analysis of the constitutionality" of § 922(o). *United States v. Schnur*, 132 F.4th 863, 867 n.1 (5th Cir. 2025).

## B.    Legal Principles

Subject to two narrow exceptions, § 922(o) makes it "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1).[4] Neither exception applies to Brown's case.

A "machinegun" is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); *see* 18 U.S.C. § 921(a)(24) (incorporating definition from Title 26); *Hollis*, 827 F.3d at 440 (explaining that § 922(o)'s definition of "machinegun" is the same one adopted in § 5845(b)).[5]

---

[4] The first exception is for machineguns transferred or possessed by government entities. 18 U.S.C. § 922(o)(2)(A). The second is for machineguns that were lawfully possessed before the statute's effective date in 1986. 18 U.S.C. § 922(o)(2)(B). Section 922(o)'s enactment as part of the Firearm Owners' Protection Act in 1986 thus "capped" civilian ownership "at pre[-]1986 levels." *Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1202 (7th Cir. 2023), *cert. denied sub nom. Harrel v. Raoul*, 144 S. Ct. 2491 (2024).

[5] The term also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b).

**C.    Discussion**

### 1.    As this Court Has Held, Machineguns Are Not Arms Protected under the Second Amendment

Nearly a decade ago, this Court rejected the argument that machinegun possession receives Second Amendment protection. *See Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016).  In *Hollis*, this Court carefully surveyed the Supreme Court's decision in *Heller* and "glean[ed]" two principles:  (1) the Second Amendment protects weapons that are "in common use at the time"; and (2) "if a weapon is dangerous and unusual, it is not in common use and not protected by the Second Amendment." *Hollis*, 827 F.3d at 445-46.

This Court then examined machineguns specifically, concluding that "[m]achineguns are dangerous and unusual and therefore not in common use." *Hollis*, 827 F.3d at 451.  As a result, this Court concluded that machineguns "do not receive Second Amendment protection"—meaning § 922(o) does not violate the Second Amendment. *Id.*; *see also Bezet v. United States*, 714 Fed.Appx. 336, 340-41 (5th Cir. 2017) (applying *Hollis* to reject a Second Amendment challenge to §  922(o)).

~~~

Though this Court's clear holding in *Hollis* forecloses Brown's Second Amendment challenge to § 922(o), the district court provided two reasons for why it could disregard *Hollis*: (1) the Supreme Court's decision in *Bruen*[6] and (2) a statistic indicates that 740,000 machineguns are registered under the National Firearms Act.[7] ROA.83-89.  Neither reason is consistent with applicable law.

**First**, *Bruen* did not overrule *Hollis*.  Under this Court's rule of orderliness, "only an intervening change in the law (such as by a Supreme Court case) permits a subsequent panel to decline to follow a prior Fifth Circuit precedent." *United States v. Alcantar*, 733 F.3d 143, 145-46 (5th Cir. 2013).  District courts within this Circuit are similarly bound. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789-90 (5th Cir. 2021) (noting that

---

[6] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

[7] The district court inserted into its order the statistic that 740,000 machineguns are registered under the National Firearms Act. ROA.89 (faulting the government for not "point[ing] to any other number"—though neither litigant had referenced the statistic in any argument before the court).

a district court is "not free to overturn" Fifth Circuit precedent, even if the

Supreme Court has "implicitly overruled" that precedent.).  An intervening

change in the law sufficient to allow a panel to decline to follow prior

precedent "must be *unequivocal,* not a mere 'hint' of how the Court might

rule in the future." *Id*. (emphasis added).

Nothing in *Bruen* unequivocally overrules *Hollis*.  *Bruen* addresses a

New York law limiting the ability of law-abiding citizens to carry *handguns*

(not machineguns) outside the home. *Bruen*, 597 U.S. at 13-16.  It counseled

against applying means-end scrutiny to Second Amendment challenges. *Id*.

at 17-19.  The *Bruen* Court said nothing about whether *machineguns*

deserve Second Amendment protection; nor did it speak to the *Hollis*

Court's conclusion that machineguns are unprotected by the Second

Amendment.[8]  If anything, *Bruen* reaffirmed *Hollis*'s holding by explaining

that there is a "fairly supported" "historical tradition of prohibiting the

---

[8] This Court did not engage in means-end scrutiny in *Hollis*.  Rather, the Court determined that machineguns are not the "Arms" protected by the Second Amendment. *Hollis v. Lynch*, 827 F.3d 436, 446-51 (5th Cir. 2016) (concluding that machineguns were not protected by the Second Amendment, without reaching the question of whether § 922(o) survives means-end scrutiny).

carrying of 'dangerous and unusual weapons.' " *Id.* at 13.  Likewise, Justice

Kavanaugh's concurring opinion, which the Chief Justice joined, reiterated

an "important limitation on the right to keep and carry arms"—*i.e.*, the

"historical tradition of prohibiting the carrying of dangerous and unusual

weapons." *Id*. at 81 (citing *Heller*, 554 U.S. at 626-627 & n.26; *McDonald v.

City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion)).  Because

nothing in *Bruen* unequivocally overruled *Hollis*, neither the district court

nor a panel of this Court is "at liberty to overrule [the] settled precedent" in

*Hollis*. *Alcantar*, 733 F.3d at 146; *see In re Bonvillian Marine Serv., Inc.*, 19 F.4th

at 789-90.

*Second*, the district court's conclusion that machineguns are more

prevalent in 2021 than they were in 2016 (when *Hollis* was decided) does

not constitute an intervening decision from the Supreme Court (or the en

banc court).[9] *See Alcantar*, 733 F.3d at 145; *In re Bonvillian Marine Serv., Inc.*,

19 F.4th at 789-90.  As explained below, the district court misunderstood

---

[9] *See supra* note 7.

the statistic on which it relied. *See infra* pp. 24-25. Even if the court had not misunderstood the statistic, the district court's order cites no case holding that it could disregard binding precedent based on a change in statistical evidence[10]—and for good reason: "[O]nly an intervening ***change in the law***" permits "a subsequent panel to decline to follow a prior Fifth Circuit precedent." *Id.* (emphasis added). The same rule applies to district courts. *In re Bonvillian Marine Serv., Inc.*, 19 F.4th at 789-90.

In sum, Brown's Second Amendment challenge to § 922(o) is foreclosed by *Hollis*. Consequently, this Court should reverse the district court's order dismissing the indictment.

---

[10] *See supra* note 7.

**2.     Section 922(o) Does Not Violate the Second Amendment**

Even if this Court's precedent did not foreclose Brown's argument

that § 922(o) is unconstitutional as applied to those who possess

machineguns, his challenge to § 922(o) fails because (a) machineguns are

not the kind of arms protected by the Second Amendment and (b) this

Nation's history of regulating dangerous and unusual weapons confirms

§ 922(o)'s constitutionality.

**a.     Machineguns Are Not the Kind of Arms Protected by the Second Amendment.**

The Second Amendment protects the right "to keep and bear Arms."

U.S. Const. amend. II.  Like most rights, however, the Second Amendment

right is "not unlimited" and is "not a right to keep and carry any weapon

whatsoever in any manner whatsoever and for whatever purpose." *Heller*,

554 U.S. at 626; *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (noting that

the right "was never thought to sweep indiscriminately").

Relevant here, the Supreme Court recognizes a limitation on the

Second Amendment right:  the Second Amendment only extends to the

sorts of weapons that are " 'in common use at the time.' "[11] *Heller*, 554 U.S.
at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)); *Miller*, 307
U.S. at 179 (first applying the common-use limitation on the Second
Amendment's reach).  Put another way, "the Second Amendment does not
protect those weapons not typically possessed by law-abiding citizens for
lawful purposes." *Heller*, 554 U.S. at 625; *id*. at 623 (recognizing that "the

---

[11] This common-use limitation is consistent with the Second Amendment's
prefatory clause:  "The traditional militia was formed from a pool of men bringing arms
'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at
624.  The Supreme Court recognized in *Heller* that "[i]t may be objected that if weapons
that are most useful in [modern] military service—M-16 rifles and the like—may be
banned, then the Second Amendment right is completely detached from the prefatory
clause" that refers to militias. *Id*. at 627-28.  Nevertheless, the *Heller* court explained that
"the fact that modern developments have limited the degree of fit between the prefatory
clause and the protected right cannot change our interpretation of the right." *Id*. at 628.

    The Supreme Court did not change the common-use or dangerous-and-unusual-
weapons aspects of *Heller* when it issued its decision in *Bruen*.  Instead, the *Bruen* court
reaffirmed *Heller*'s conclusion that there is a "fairly supported" "historical tradition of
prohibiting the carrying of 'dangerous and unusual weapons.' " *Bruen*, 597 U.S. at 21
(citing 4 W. Blackstone, *Commentaries on the Laws of England* at 148-149; *Miller*, 307 U.S.
at 179).

Second Amendment right, whatever its nature, extends only to certain types of weapons").[12]

When conducting their analyses, courts cannot look at the Amendment's text in isolation but must instead consider the text "according to the understandings of those who ratified it," *Bruen*, 597 U.S. at 28.  And, as the Supreme Court has explained, the right to bear arms was not understood in 1791 as "a right to keep and carry any weapon whatsoever," but only as a right to possess firearms " 'in common use at the time,' " *Heller*, 554 U.S. at 626-27; *see Bruen*, 597 U.S. at 47 ("[W]e explained [in *Heller*] that the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.' ") (quoting *Heller*, 554 U.S. at 629).

*Heller* went on to hold that the textual "common use" limitation also "accords with the historical understanding of the scope of the right."

---

[12] *See also Caetano v. Massachusetts*, 577 U.S. 411, 412 (2016) (reiterating one of *Heller*'s important limitations on the right to keep and bear arms—*i.e.*, the historical tradition of prohibiting the carrying of dangerous and unusual weapons).

*Heller*, 554 U.S. at 625.  The Court explained that this "limitation is fairly

supported by the historical tradition of prohibiting the carrying of

'dangerous and unusual weapons.' " *Id.* at 627.  Thus, whether as a

matter of text, history, or both, firearms not "in common use" for "lawful

purposes" do not receive Second Amendment protection.[13]

The Supreme Court's *Bruen* decision did not call into question *Miller*

or *Heller*'s "common use" limitation.  Rather, *Bruen* explained that *Heller*

had "relied on the historical understanding of the Amendment to demark

the limits on the exercise of that right." *Bruen*, 597 U.S. at 21. "For

example," *Heller* had "found it 'fairly supported by the historical tradition

---

[13] The Supreme Court first applied the "common use" limitation in *Miller*, which upheld convictions for possession of unregistered short-barreled shotguns in violation of the National Firearms Act.  *Miller*, 307 U.S. at 179.  The *Miller* Court said it could not conclude that "the Second Amendment guarantees the right to keep and bear such an instrument [a short-barreled shotgun]," which was not "part of the ordinary military equipment." *Id.* at 178.  Subsequently, the Court explained that *Miller*'s reference to "ordinary military equipment," "[r]ead in isolation," might be taken to mean that "only those weapons useful in warfare are protected."  *Heller*, 554 U.S. at 624.  But the Court rejected that "startling reading" of *Miller*, which "would mean that the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." *Id.*  Instead, the Court read *Miller* as holding that the Second Amendment protects the kinds of weapons used for militia service at the founding, that is, "arms 'in common use at the time' for lawful purposes like self-defense." *Id.* (quoting *Miller*, 307 U.S. at 179).

of prohibiting the carrying of dangerous and unusual weapons' " that the Second Amendment applies to weapons that are "in common use at the time." *Id.* (quoting *Heller*, 554 U.S. at 627 (internal quotation marks omitted)).  Later, the Supreme Court again mentioned that, "[d]rawing from this historical tradition," *Heller* had "explained . . . that the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.' " *Id.* at 47 (quoting *Heller*, 554 U.S. at 627).  These statements from the Supreme Court in *Bruen* support this Court's holding in *Hollis* that dangerous and unusual weapons, like machineguns, are not protected by the Second Amendment.

In *Rahimi*, the Supreme Court again recognized that some jurisdictions at the founding "banned the carrying of 'dangerous and unusual weapons.' " *Rahimi*, 602 U.S. at 691.  This, too, supports this Court's holding in *Hollis*.  Indeed, this line of cases shows that the Supreme Court has established (repeatedly) that—consistent with the text and history underlying the Second Amendment—the government may regulate

firearms not typically possessed by law-abiding citizens for lawful

purposes, such as dangerous and unusual weapons.

~~~

Following *Heller* and *Miller*'s clear instruction that the Second

Amendment does not extend to *all* firearms—and, specifically, does not

extend to "those weapons not typically possessed by law-abiding citizens

for lawful purposes," *Heller*, 554 U.S. at 599, 625; *Miller*, 307 U.S. at 178-79—

this Court's caselaw holds that the Second Amendment does not protect

the possession of "dangerous and unusual" guns.[14] *Hollis*, 827 F.3d at 447

(quoting *Heller*, 554 U.S. at 627).  And, as explained above, this Court has

expressly addressed the type of firearm at issue here, holding that

---

[14] While machineguns are sometimes used for lawful purposes (*i.e.*, shooting at a target), they are not the type of gun *typically* possessed for traditionally lawful purposes, such as self-defense within the home.  Rather, machineguns are "primarily weapons of war and have no appropriate sporting use or use for personal protection." *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (quoting S. Rep. No. 90-1501, at 28 (1968)); *see also Haynes v. United States*, 390 U.S. 85, 86 (1968) (recognizing that machineguns are "weapons used principally by persons engaged in unlawful activities").

machineguns are dangerous and unusual.[15] *Id*. at 451.  Thus, because the

Second Amendment does not guarantee a right to possess machineguns,

the government can regulate their possession. *Id*. ("Machineguns are

dangerous and unusual and therefore not in common use.  They do not

receive Second Amendment protection.").

~~~

The district court did not address this uniform wall of authority; nor

did it cite one binding case holding that machinegun possession is

protected under the Second Amendment.  Instead, the court relied on what

it calls an "outlier" district court order from a different circuit. ROA.85.

---

[15] This Court's decision in *Hollis* also accords with the holding of every other Circuit that has considered whether machineguns warrant Second Amendment protection. *See United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame*, 822 F.3d 136, 141-44 (3d Cir. 2016) ("[T]he Second Amendment does not protect the possession of machine guns.  They are not in common use for lawful purposes."); *United States v. Henry*, 688 F.3d 637, 639-40 (9th Cir. 2012) (same); *United States v. Fincher*, 538 F.3d 868, 873-74 (8th Cir. 2008) (same); *see also Hamblen v. United States*, 591 F.3d 471, 473-74 (6th Cir. 2009) (explaining the right to keep and bear arms does not authorize an unlicensed individual to possess unregistered machine guns for personal use); *United States v. Zaleski*, 489 Fed.Appx. 474, 475 (2d Cir. 2012) (unpublished) (same).  The Tenth Circuit is considering this issue post-*Bruen*. *See United States v. Morgan*, No. 24-3141 (10th Cir.).

The district court also resisted this wall of binding authority by suggesting that—in the few years since *Hollis* was decided—machineguns morphed from "dangerous and unusual" to "common" because there are more than 740,000 registered machineguns today. ROA.89-92.  Importantly, that number includes the total number of registered machineguns— including those registered to government entities like police forces. *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States: Annual Statistical Update 2021*, at 16 [hereinafter ATF 2021 Report].[16]  In *Hollis*, this Court correctly considered the number of "pre-1986 *civilian-owned* machineguns." *Hollis*, 827 F.3d at 449 (emphasis added). And that number is not in flux, as § 922(o) "capped" civilian ownership "at pre[-]1986 levels." *Bevis v. City of Naperville*, 85 F.4th 1175, 1202 (7th Cir. 2023).

Even if it were appropriate to consider the total number of registered machineguns, that number pales in comparison to the ***several million*** new

---

[16] https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download.

firearms that are manufactured here *each year* and to the ***several million***

***more*** that are imported here ***each year***.[17] *See* ATF 2021 Report, at 1-2, 5-6.[18]

Thus, contrary to the district court's suggestion, the raw number of

registered machineguns does not establish that they are in common use.

*Hollis*, 827 F.3d at 451 (finding that machineguns are "dangerous and

unusual and therefore not in common use").

~~~

The consistent holdings of this Court in *Hollis*, of all the circuit courts

who have addressed this issue, and of the overwhelming majority of

---

[17] Indeed, even district courts that have mistakenly relied on the total number of registered machineguns, rather than the number registered to civilians, have nevertheless concluded that machineguns are not in common use by law-abiding citizens for lawful purposes. *See United States v. Simien*, 655 F.Supp.3d 540, 553 (W.D. Tex. 2023) ("Although the number of civilian-owned machineguns has increased to about 740,000, this amount—which is less than .2% of total firearms in the United States—remains too insignificant for machineguns to be considered in common use."); *United States v. Lane*, 689 F.Supp.3d 232, 251 (E.D. Va. 2023) (quoting, with approval, conclusion from *Simien*); *United States v. Wilson*, 2024 WL 1144251, at *3 (N.D. Tex. 2024) ("While correct that the number of civilian-owned machineguns has increased to about 740,000 as of May 2021, as cited by Wilson, this amount remains too insignificant for machineguns to be considered in common use, especially when factoring in the total increase in firearm usage nationwide.").

[18] https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download.

district courts who have passed on this constitutional challenge are unsurprising given the relevant evidence, which demonstrates that machineguns are much rarer than semiautomatic pistols and rifles—and much more dangerous.

"Machine guns possess a firepower that outstrips any other kind of gun." *United States v. Kirk*, 105 F.3d 997, 1001 (5th Cir. 1997) (en banc) (per curiam) (Higginbotham, J., concurring); *United States v. O'Brien*, 560 U.S. 218, 230 (2010) (recognizing "[t]he immense danger posed by machineguns"). "A modern machinegun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds." *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). "Short of bombs, missiles, and biochemical agents," there are "few weapons that are more dangerous than machine guns." *Id.*; *see also United States v. Lopez*, 2 F.3d 1342, 1356 (5th Cir. 1993) (classifying machineguns as "highly destructive, sophisticated weapons").[19]

---

[19] *Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1193, 1197 (7th Cir. 2023), *cert. denied sub nom. Harrel v. Raoul*, 144 S. Ct. 2491 (2024) ("*Heller* informs us that [the M16] is not

Moreover, machineguns are "specially adapted to unlawful uses." *Friedman v. City of Highland Park*, 577 U.S. 1039 (2015) (Thomas, J., dissenting from denial of certiorari); *see Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 116-17 (10th Cir. 2024) (observing that "the Second Amendment does not extend to weapons" that are "adapted for unlawful uses").  As Congress has observed, machineguns are "used readily and efficiently by criminals or gangsters," H.R. Rep. No. 83-1337, at A395 (1954), and are "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime," H.R. Rep. No. 99-495, at 4 (1986).

The legislative landscape reflects this judgment and indicates that machineguns are not in common use for lawful purposes.  Twelve states and the District of Columbia prohibit the possession of machineguns by private persons, regardless of whether they are properly registered

---

protected by the Second Amendment, and therefore may be regulated or banned. Because it is indistinguishable from that machinegun, the AR-15 may be treated in the same manner without offending the Second Amendment.").

under the National Firearms Act.[20]  Another 25 states regulate or ban

private machinegun possession, while providing an exception or

affirmative defense for machineguns possessed in compliance with

federal law.[21]  Two states, without mentioning federal law, require

registration of machineguns and make their public carry presumptively

unlawful.[22]  Thus, unlike with commonly owned guns like handguns,

there is a nationwide legislative consensus in favor of prohibiting or

severely restricting the possession of machineguns.

---

[20] Cal. Penal Code § 32625; Colo. Rev. Stat. § 18-12-102; Del. Code Ann. tit. 11, § 1444(a)(5); D.C. Code Ann. § 22-4514; Haw. Rev. Stat. § 134-8; 720 Ill. Comp. Stat. 5/24-1(a)(7)(i); Iowa Code §§ 724.1, 724.3; Mass. Gen. Laws ch. 140, § 131(o); Minn. Stat. § 609.67, subd. 2; N.J. Stat. Ann. § 2C:39-5(a); N.Y. Penal Law § 265.02(2); R.I. Gen. Laws § 11-47-8(a); Wis. Stat. § 941.26(1)(a).

[21] Alaska Stat. § 11.61.200(a)(3), (c), (h)(1)(C); Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iii), 13-3102(A)(3), (F); Ark. Code Ann. §§ 5-73-204, 5-73-205; Conn. Gen. Stat. § 53-202(g), (h); Fla. Stat. § 790.221; Ga. Code Ann. §§ 16-11-122, 16-11-124; Ind. Code §§ 35-47-5-8, 35-47-5-10; Kan. Stat. Ann. § 21-6301(a)(5), (h); La. Stat. Ann. § 40:1752; Me. Stat. tit. 17-A, §§ 1051, 1052; Mich. Comp. Laws § 750.224(1), (3)(c); Mo. Rev. Stat. § 571.020; Neb. Rev. Stat. § 28-1203; Nev. Rev. Stat. § 202.350(1)(b); N.C. Gen. Stat. § 14-409; N.D. Cent. Code § 62.1-05-01; Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17(A), (C)(5); Or. Rev. Stat. § 166.272; 18 Pa. Cons. Stat. § 908; S.C. Code Ann. §§ 16-23-230, 16-23-250, 23-31-330; S.D. Codified Laws §§ 22-1-2(8), (23), 22-14-6; Tenn. Code Ann. § 39-17-1302(a)(3), (d); Tex. Penal Code Ann. § 46.05(a)(1)(B); Wash. Rev. Code § 9.41.190(1), (4); W. Va. Code § 61-7-9.

[22] Md. Code Ann., Criminal Law §§ 4-403, 4-404, 4-405; Va. Code Ann. §§ 18.2-290, 18.2-291, 18.2-295.

Statistical evidence also shows that machineguns are not typically possessed by law-abiding citizens for lawful purposes.  As of 2016, there were "175,977 pre-1986 civilian-owned machineguns in existence." *Hollis*, 827 F.3d at 449 (citing ATF statistics).  That is a tiny fraction of the 300 million to 400 million privately owned firearms in the United States.[23]  It is also a number that pales in comparison to the number of firearms manufactured in and imported into the United States every year, which has exceeded 15 million in recent years.[24]  Moreover, those approximately 176,000 civilian-owned machineguns are not spread over 176,000 civilians, because many are amassed by collectors who own

---

[23] *See* The Trace, *How Many Guns are Circulating in the U.S.?*, https://www.thetrace.org/2023/03/guns-america-data-atf-total/ (estimate of 434 million guns in civilian possession as of 2020); Small Arms Survey, *Estimating Global Civilian-Held Firearms Numbers*, at 4 (June 2018), https://www.smallarmssurvey.org/sites/default/files/resources/SAS-BP-Civilian-Firearms-Numbers.pdf (estimate of 393 million guns possessed by civilians); John Berrigan, *et al.*, *The Number and Type of Private Firearms in the United States*, Annals of the American Academy of Political and Social Science, Vol. 704, Issue 1, at 82 (Nov. 2022) (estimate of 326 million in 2019).

[24] *See* The Trace, *How Many Guns are Circulating in the U.S.?*, https://www.thetrace.org/2023/03/guns-america-data-atf-total/.

multiple machineguns.[25]  But, even assuming that those machineguns

were spread among 176,000 civilians, only one in 1,908 Americans—

roughly 0.05% of the population—would legally own a machinegun,[26]

compared to the roughly one in three Americans who owns a gun.[27]

Given the fixed supply of pre-1986 machineguns, the cost of a

privately registered machinegun is extremely high.  "[T]oday, a

transferable M16 costs nearly $30,000 while 'entry-level' machine guns cost

in the ballpark of $10,000." Oliver Krawczyk, *Dangerous and Unusual:  How

an Expanding National Firearms Act Will Spell Its Own Demise*, 127 DICKINSON

L. REV. 273, 285 (2022).  The current wait time for such a transfer

(accomplished using ATF Form 4) is 156 days for paper forms and 24 days

---

[25] *See* Boise State Public Radio, *Automatic weapons are legal, but it takes a lot to get one of the 630,000 in the U.S.* (Dec. 21, 2018), https://www.boisestatepublicradio.org/news/ 2018-12-21/automatic-weapons-are-legal-but-it-takes-a-lot-to-get-one-of-the-630-000-in-the-u-s (interviewing a collector with more than 20 machineguns).

[26] *See* U.S. Census Bureau, *Happy New Year 2024!*, https://www.census.gov/ library/stories/2023/12/happy-new-year-2024.html (estimating a population of 335,893,238 as of January 1, 2024).

[27] *See* Pew Research Center, *Key facts about Americans and guns*, https://www.pewresearch.org/short-reads/2024/07/24/key-facts-about-americans-and-guns/.

for electronic forms. *Id.* at 289 & n.81; Bureau of Alcohol, Tobacco, Firearms

and Explosives, *Current Processing Times*, https://www.atf.gov/resource-

center/current-processing-times (as of Apr. 8, 2025).

The limited number of pre-1986 machineguns in civilian hands, their

high cost, and the difficulty of acquiring them all indicate that they are not

"in common use" or "typically possessed by law-abiding citizens." *Heller*,

554 U.S. at 624-25, 627.  Because machineguns are dangerous and unusual

and not "in common use," they are not "Arms" that receive Second

Amendment protection. *Hollis*, 827 F.3d at 451. Thus, the federal

prohibition on machinegun possession—Section 922(o)—does not violate

the Second Amendment. *Id*.

### b.    Even So, this Nation's History Confirms that § 922(o) Is Constitutional.

Even if this Court concludes that (1) *Bruen* abrogated *Hollis* and

(2) machineguns are typically possessed by law-abiding citizens for lawful

purposes, § 922(o) still does not violate the Second Amendment because

the statute "is consistent with this Nation's historical tradition of firearm

regulation." *Bruen*, 597 U.S. at 17.

31

As to "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding," *Bruen*, 597 U.S. at 26, *Heller* explained—and *Bruen* did not disturb—that this Nation's "historical tradition" includes "prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 637; *id*. at 627 (explaining that extending the Second Amendment's protections only to those Arms that were in "common use at the time" "is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.' " (citing 12 historical sources)).  Because the Supreme Court has already authoritatively established this principle, *Heller*, 554 U.S. at 627, 637; *Rahimi*, 602 U.S. at 692, this Court need not sift through any additional historical sources to confirm this point.

Even so, an array of historical laws confirms the principle that the *Heller* court recognized.  For example, under English common law, "the offense of riding or going armed, with dangerous or usual weapons, [was] a crime." 4 W. Blackstone, *Commentaries on the Laws of England* 148-49 (1769); *see Rahimi*, 602 U.S. at 697-98.  The statute was consistent with the

common law offense of "affray," which included cases "where a man arms

himself with dangerous and unusual weapons, in such a manner as will

naturally cause a terror to the people." 1 Richard Burn, *The Justice of the*

*Peace, and Parish Officer* 13-14 (2d ed. 1756); 1 William Hawkins, *A Treatise of*

*the Pleas of the Crown* 135 (1716).

The American colonies likewise "prohibited the carrying of

'dangerous and unusual weapons.' " *Bruen*, 597 U.S. at 47; *see Heller*, 554

U.S. at 627.  Early American justice-of-the-peace manuals empowered

justices to confiscate the arms of a person who "arm[ed] himself with

dangerous and unusual weapons, in such a manner as will naturally

cause a terror to the people."[28]  Colonial Massachusetts (1692) and New

Hampshire (1701) codified this authority, providing that justices of the

peace could arrest "all affrayers, rioters, disturbers or breakers of the

---

[28] Joseph Greenleaf, *An Abridgment of Burn's Justice of the Peace and Parish Officer*, 12-13 (1773) (Mass.); William Waller Hening, *The New Virginia Justice* 18 (1795) (Va.); Eliphalet Ladd, *Burn's Abridgement, Or The American Justice* 22- 24 (2d ed. 1792) (N.H.); James Parker, *Conductor Generalis* 12 (1764) (N.J.); James Parker, *Conductor Generalis* 12 (Robert Hodge printing 1788) (N.Y.); James Parker, *Conductor Generalis* 11 (Robert Campbell printing 1792) (Pa.).

peace, and such as shall ride, or go armed offensively . . . by night or by day, in fear or affray of their majesties' liege people."[29]

In the late-18th century, the Commonwealth of Virginia (1786) similarly provided that no person shall "ride armed by night nor by day, . . . in terror of the Country,"[30] and the Commonwealth of Massachusetts (1795) later again directed justices of the peace to arrest "all affrayers, rioters, disturbers, or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this Commonwealth."[31]

Although these statutes contemplated that an affray required "something more" than merely carrying any firearm in public, *Bruen*, 597 U.S. at 50, they contemplated that it would naturally constitute affray to carry dangerous and unusual weapons, *see id.* at 46-47. Indeed, for

---

[29] *See* Act of Nov. 1, 1692, ch. 18, § 6, *in* 1 *Acts and Resolves of the Province of Massachusetts Bay* 52-53 (1869); Act of June 14, 1701, ch. 7, *in* 1 *Laws of New Hampshire* 679 (Albert Stillman Batchellor ed., 1904).

[30] Act of Nov. 27, 1786, ch. 21, in *A Collection of all such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as are now in Force* 33 (1794).

[31] Act of Jan. 29, 1795, ch. 2, 1795 Mass. Acts 436.

centuries, American courts have acknowledged that a man commits "an offence at common law" when he "arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." *State v. Langford*, 3 Hawks 381, 383 (N.C. 1824).

And, throughout the 1800s, states adopted restrictions on a wide variety of dangerous and unusual weapons. For example, many states banned the sale, carry, or concealed carry of dangerous knives such as Bowie knives, Arkansas toothpicks, dirks, and daggers.[32] Many states

---

[32] *See, e.g.*, Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90; Act of Jan. 27, 1838, ch. 137, § 1, 1838 Tenn. Pub. Acts 200; Act of Feb. 2, 1838, ch. 101, § 1, 1838 Va. Acts 76; Act of Jan. 6, 1841, Penal Code, ch. 7, § 4, 1840 Ala. Laws 148-49; Act of Mar. 14, 1855, No. 120, § 115, 1855 La. Acts 148; Act of Feb. 23, 1859, ch. 78, § 1, 1859 Ind. Laws 129; Act of Mar. 18, 1859, § 1, 1859 Ohio Laws 56-57; Act of Mar. 1, 1864, ch. 128, § 1, 1864 Cal. Stat. 115; Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws 25; Act of Feb. 15, 1872, ch. 7, § 1, 1872 Wis. Laws 17; Act of Mar. 4, 1873, ch. 58, pt. 1, ch. 4, § 25, 1873 Neb. Laws 724; Act of Dec. 27, 1873, ch. 226, § 168, 1872 W. Va. Acts 709; Act of Feb. 16, 1875, § 1, 1875 Ark. Acts 156-57; Act of Feb. 28, 1878, ch. 46, § 1, 1878 Miss. Laws 175; Act of Mar. 5, 1879, ch. 127, § 1, 1879 N.C. Laws 231; Act of May 24, 1879, § 1, 1879 Ill. Laws 114-15; Act of Dec. 24, 1880, No. 362, § 1, 1880 S.C. Acts 447-48; Act of Feb. 1, 1881, § 1, 1881 Colo. Laws 74; Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts 191-92; Act of April 16, 1881, § 4, 1881 Ill. Laws 74; Act of Mar. 14, 1882, ch. 219, § 1, 1881 Va. Acts 233; Act of Mar. 24, 1882, ch. 135, § 1, 1882 W. Va. Acts 421; Act of Feb. 18, 1885, § 1, 1885 Or. Laws 33; Act of Apr. 7, 1886, ch. 375, § 1, 1886 Md. Laws 602; Act of May 31, 1887, No. 129, § 1, 1887 Mich. Pub. Acts 144; Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws 231-32; Act of June 2, 1893, ch. 4124, § 1, 1893 Fla. Laws 51.

also banned the possession, sale, carry, or concealed carry of blunt weapons such as slung shots, brass knuckles, and billy clubs.[33] Consistent with a colonial New Jersey (1771) statute that made it a crime to "set any loaded Gun . . . intended to go off or discharge itself, or be discharged by any String, Rope, or other Contrivance,"[34] various states in the 19th and 20th centuries criminalized the setting of "trap guns."[35]

Relevant here, in the mid-1920s, light, portable machineguns such

---

[33] *See, e.g.*, Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404; Act of Nov. 12, 1849, No. 36, § 2, 1849 Vt. Acts 26; Act of Aug. 6, 1868, No. 13, ch. 1637, ch. 7, § 11, 1868 Fla. Laws 95; Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws 25; Act of Feb. 16, 1875, § 1, 1875 Ark. Acts 156-57; Act of Apr. 16, 1881, § 1, 1881 Ill. Laws 73; Act of Mar. 24, 1882, ch. 135, § 1, 1882 W. Va. Acts 421; Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws 231-32.

[34] Act of December 21, 1771, ch. 540, § 10, 1771 N.J. Laws 346.

[35] *See, e.g.*, Act of Mar. 6, 1852, § 103, 1851 Utah Laws 137; Act of Feb. 25, 1869, ch. 33, § 1, 1869 Wis. Laws 35; Act of Feb. 27, 1869, ch. 39, § 1, 1869 Minn. Laws 50-51; Act of Apr. 22, 1875, No. 97, § 1, 1875 Mich. Pub. Acts 136; Act of Nov. 25, 1884, No. 76, § 1, 1884 Vt. Acts 74-75; Penal Code, § 7094, 1895 N.D. Rev. Codes 1259; Act of Mar. 8, 1909, ch. 240, § 22, 1909 S.D. Laws 450; Act of Mar. 22, 1909, ch. 249, § 266, 1909 Wash. Laws 973; Act of Feb. 14, 1913, No. 201, § 16, 1912 Vt. Acts 260-61; Act of Apr. 1, 1913, ch. 186, § 1, 1913 N.J. Laws 339; Act of Apr. 21, 1915, ch. 133, § 17, 1915 N.H. Laws 180-81; Act of July 7, 1921, ch. 530, § 1, 1921 Wis. Laws 870; Act of Feb. 11, 1925, ch. 31, § 1, 1925 Or. Laws 42; Act of Feb. 25, 1931, No. 58, § 1, 1931 S.C. Acts 78; Act of June 16, 1931, No. 327, § 236, 1931 Mich. Pub. Acts 671; *see* Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws 442.

as the Thompson submachine and the Browning Automatic Rifle became

publicly available in the United States and began to be used by gangsters

and criminals. *See* Robert J. Spitzer, *Understanding Gun Law History After*

Bruen*: Moving Forward by Looking Back*, 51 FORDHAM URB. L.J. 57, 60-63

(2023). Between 1925 and 1934, at least half the states responded to this

societal problem by enacting anti-machinegun laws, including

comprehensive bans[36] or licensing requirements or other similar

restrictions.[37]

---

[36] *See* Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938; Act of Mar. 9, 1927, ch. 156, § 1, 1927 Ind. Acts 469; Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts 201; Act of Apr. 22, 1927, ch. 1052, § 4, 1927 R.I. Pub. Laws 257; Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888-89; Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws 157; Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws 777; Act of Apr. 29, 1929, ch. 190, § 1, 1929 Neb. Laws 674; Act of June 1, 1929, H.B. 498, § 1, 1929 Mo. Laws 170; Act of Feb. 25, 1931, ch. 249, § 1, 1931 Del. Laws 813; Act of Apr. 15, 1931, ch. 435, § 1, 1931 N.Y. Laws 1033; Act of July 2, 1931, § 2, 1931 Ill. Laws 452-53; Act of July 7, 1932, No. 80, § 2, 1932 La. Acts 337; Act of Feb. 28, 1933, ch. 206, §§ 1-5, 1933 S.D. Laws 245-46; Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws 335; Act of Mar. 10, 1933, ch. 315, § 3, 1933 Or. Laws 489; Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws 233; Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws 219; Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws 76; Act of Mar. 2, 1934, No. 731, §§ 2-4, 1934 S.C. Acts 1288.

[37] Act of June 5, 1925, ch. 3, 1925 W. Va. Acts (Extraordinary Session) 30-32; Act of Mar. 19, 1927, ch. 95, § 2, 1927 N.J. Laws 181; Act of Apr. 27, 1927, ch. 326, § 1, 1927 Mass. Acts 413-14; Act of Mar. 9, 1931, ch. 178, § 2, 1931 N.D. Laws 306; Act of Apr. 8, 1933, No. 64, 1933 Ohio Laws 189; Act of Mar. 7, 1934, ch. 96, §§ 2-5, 1934 Va. Acts 138.

Congress, too, responded to the "law violator" and "his most dangerous weapon," S. Rep. No. 73-1444, at 1-2 (1934), by enacting the National Firearms Act of 1934, which imposed a $200 tax on machineguns and required that they be registered with the federal government, *see* 26 U.S.C. §§ 5801-5802, 5811-5812, 5821-5822, 5841-5842, 5845 (a)-(b).  The $200 tax was prohibitively expensive to most Americans, as it was "equivalent to nearly $4,500 today." W. Kip Viscusi & Kyle J. Blasinsky, *Leveraging Public Support for Gun Laws to Reduce Mass Shootings*, 2024 U. ILL. L. REV. 707, 755 (2024).  The taxing and registration system made it more difficult for "the criminal class" to obtain the weapons and made it easier to "convict [criminals] when they have the weapons." *National Firearms Act:  Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73d Cong. at 6, 12, 22 (statement of Attorney General Homer Cummings).

In 1986, Congress adopted § 922(o) as part of the Firearm Owners' Protection Act, Pub. L. No. 99-308, § 102, 100 Stat. 449, 453 (1986).  That provision "effectively freezes the number of legal machine guns in

private hands at its 1986 level," *United States v. Kenney*, 91 F.3d 884, 885

(7th Cir. 1996), by making it illegal for "any person to transfer or possess

a machinegun" unless the transfer or possession is (a) under the

authority of a government entity or (b) involves a "machinegun that was

lawfully possessed" before 1986, 18 U.S.C. § 922(o)(2)(A), (B).[38]

Section 922(o) is consistent with our nation's longstanding

tradition of firearm regulation. As indicated above, English and

American jurisdictions restricted the carrying of dangerous and

unusual weapons even before the founding era. *See Rahimi*, 602 U.S. at

691. States restricted a variety of such weapons throughout the 1800s,

apparently without "disputes regarding the lawfulness of such

prohibitions." *Bruen*, 597 U.S. at 30. And, many states—followed

quickly by the federal government—began regulating machineguns

within a few years of their entry into civilian use.[39]

---

[38] The transfer of a pre-1986 machinegun continues to be subject to a $200 tax. 26 U.S.C. § 5811(a).

[39] Post-ratification history is particularly relevant given that machineguns are largely a 20th-century innovation. As the *Bruen* court recognized, "unprecedented

Section 922(o) is, therefore, part of a tradition of weapons regulation that goes back to the founding.  This longstanding tradition shows that the government may ban guns that are not in common use (*i.e.*, not typically possessed by law-abiding citizens for lawful purposes)—such as dangerous and unusual weapons like machineguns. *See Rahimi*, 602 U.S. at 724 (Kavanaugh, J., concurring) ("Post-ratification interpretations and applications by government actors—at least when reasonably consistent and longstanding—can be probative of the meaning of vague constitutional text.").

~~~

In the light of the Supreme Court's conclusion that our nation's historical tradition includes regulating dangerous and unusual firearms like machineguns, this Court should reject Brown's constitutional challenge to § 922(o) on historical grounds (if it does not reject his challenge based on

---

societal concerns or dramatic technological changes may require a more nuanced approach" to the analogical inquiry. *Bruen*, 597 U.S. at 27.

*Heller* and/or the conclusion that machineguns are not "Arms" protected by

the Second Amendment).[40]

---

[40] In addition to the pre-*Bruen* holdings noted on pages 23 through 27, dozens of federal courts to have considered § 922(o)'s constitutionality post-*Bruen* have upheld the statute. *See, e.g., United States v. Johnson,* 2024 WL 4612888, at *9-14 (E.D. Mich. 2024); *DeWilde v. Attorney General,* 2024 WL 4643681, at *5-7 (D. Wyo. 2024); *United States v. Brown,* 2024 WL 4241959, at *2-3 (D.S.C. 2024); *United States v. Chan,* 2024 WL 4028019, at *5-6 (D. Haw. 2024); *United States v. Barrow,* 2024 WL 3814041, at *2 (N.D. Ga. 2024); *United States v. Elliott,* 2024 WL 3161879, at *2 (E.D. La. 2024); *United States v. Caldwell,* 2024 WL 2784340, at *5 (N.D. Ohio 2024); *United States v. Mitchell,* 734 F.Supp.3d 702, at 704-09 (N.D. Ohio 2024); *United States v. Alsenat,* 734 F.Supp.3d 1295, 1299-1310 (S.D. Fla. 2024); *United States v. Hicks,* 2024 WL 1840326, at *2-5 (W.D. La. 2024); *United States v. Berríos-Aquino,* 2024 WL 1468488, at *4-7 (D.P.R. 2024); *United States v. Cousar,* 2024 WL 1406898, at *11-13 (D. Kan. 2024); *United States v. Jackson,* 2024 WL 1160304, at *11 (N.D. Miss. 2024); *United States v. Wilson,* 2024 WL 1144251, at *2-3 (N.D. Tex. 2024); *United States v. Hernandez,* 721 F.Supp.3d 310, 314-17 (D. Del. 2024); *United States v. Hart,* 2024 WL 893335, at *3 (D. Minn. 2024); *United States v. Bachmann,* 2024 WL 730489, at *1-3 (M.D. Fla. 2024); *United States v. Fisher,* 2024 WL 589115, at *1-3 (W.D.N.C. 2024); *United States v. Berger,* 715 F.Supp.3d 676, 680-97 (E.D. Pa. 2024); *United States v. Williams,* 2024 WL 308460, at *2 (N.D. Ill. 2024); *United States v. Kelley,* 2024 WL 264588, at *1 (D. Minn. 2024); *United States v. Wilson,* 2023 WL 8288989, at *5 (W.D. Tenn. 2023); *United States v. Delafose,* 2023 WL 7368239, at *1-2 (W.D. La. 2023); *United States v. Sturgeon,* 2023 WL 6961618, at *3 (E.D. Ky. 2023); *United States v. Smith,* 2023 WL 6880423, at *1-2 (E.D. Ky. 2023); *United States v. Lane,* 689 F.Supp.3d 232, 249-53 (E.D. Va. 2023); *United States v. Kittson,* 2023 WL 5015812, at *2-3 (D. Or. 2023); *United States v. Cooperman,* 2023 WL 4762710, at *2-3 (N.D. Ill. 2023); *Cox v. United States,* 2023 WL 4203261, at *7-8 (D. Ala. 2023); *United States v. Dixon,* 2023 WL 2664076, at *2-5 (N.D. Ill. 2023); *United States v. Simien,* 655 F.Supp.3d 540, 552-53 (W.D. Tex. 2023).

## CONCLUSION

This Court should reverse the district court's order dismissing the indictment and remand for additional proceedings.

Respectfully submitted,

PATRICK A. LEMON
*Acting United States Attorney*
*Southern District of Mississippi*

By:   /s/ *Jennifer Case*
_____
JENNIFER CASE
*Assistant United States Attorney*
Mississippi Bar Number 104238

SAMUEL GOFF
*Assistant United States Attorney*
Mississippi Bar Number 105813
501 E. Court Street, Suite 4.430
Jackson, Mississippi  39201
Dated:  April 24, 2025          (601) 965-4480

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the Electronic Case Filing system (ECF), which caused the filing to be served on counsel of record.

Dated:  April 24, 2025

/s/ *Jennifer Case*
_____

JENNIFER CASE
*Assistant United States Attorney*

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 8,426 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the typestyle requirements of FED. R. APP. 32(a)(6) because the brief has been prepared using Palatino Linotype 14-point font produced by MS Word software; the footnotes are in 12-point type.

3.  Privacy redactions required by FIFTH CIR. R. 25.2.13 have been made to this brief.

4.  The electronic submission of this brief is an exact copy of the paper document as required by FIFTH CIR. R. 25.2.1.

5.  This brief has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated:  April 24, 2025

_____
/s/ *Jennifer Case*

JENNIFER CASE
*Assistant United States Attorney*