No. 25-60102

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

JUSTIN BRYCE BROWN,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Mississippi

## BRIEF OF *AMICI CURIAE* GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE AND BRADY CENTER TO PREVENT GUN VIOLENCE IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

Michael Kim Krouse
Paul J. Fishman
Christopher Joseph
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
michael.krouse@arnoldporter.com
paul.fishman@arnoldporter.com
christopher.joseph@arnoldporter.com

Joanna McDonough
ARNOLD & PORTER
   KAYE SCHOLER LLP
200 Clarendon Street, 53rd Floor
Boston, MA 02116
(617) 351-8050
joanna.mcdonough@arnoldporter.com

May 9, 2025

*Counsel for Amici Curiae*
*Giffords Law Center to Prevent Gun*
*Violence and Brady Center to Prevent*
*Gun Violence*

**Corporate Disclosure and Certificate of Interested Persons**

Counsel of record certifies that *amici* Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence are nonprofit organizations as defined under § 501(c)(3) of the Internal Revenue Code.  These organizations have no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

The *amici* have authored this brief in whole.  Counsel is not aware of any person or entity as described in Circuit Rule 28.2.1 that has an interest in the outcome of this case other than those listed in the Plaintiff-Appellee's certificate.  These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

/s/ *Michael Kim Krouse*
Michael Kim Krouse

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**INTEREST OF *AMICI CURIAE***...........................................................................1

**INTRODUCTION**...................................................................................................2

**ARGUMENT** .........................................................................................................5

I.   Machineguns Are Dangerous And Unusual Weapons That Pose A
     Profound Threat To Public Safety. ...................................................................5

     A.   Congress Passed the National Firearms Act to Address High-
          Profile Gang Violence ...........................................................................5

     B.   Congress Has Continued to Pass Laws to Address the Danger
          of Machineguns and to Respond to Technological Advances .............7

     C.   In Recent Years, There Has Been A Drastic Increase In Use
          of Machinegun Conversion Devices, Such As "Glock
          Switches," To Perpetrate Crimes .........................................................9

II.  Prosecutors Rely On § 922(o) To Successfully Prosecute Violent
     Criminals And To Protect Public Safety. ......................................................11

     A.   Crimes Involving Machineguns Lead to Longer Sentences ...............11

     B.   Prosecutions Under Section 922(o) Have Increased
          Significantly .......................................................................................12

**CONCLUSION**....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bevis v. City of Naperville*,
   85 F.4th 1175 (7th Cir. 2023) ................................................................ 3

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) .................................................................... 2, 3, 4

*Hollis v. Lynch*,
   827 F.3d 436 (5th Cir. 2016) ............................................................... 4

*New York State Rifle & Pistol Ass'n v. Bruen*
   597 U.S. 1, 21 (2022) ......................................................................... 4

*United States v. Miller*,
   307 U.S. 174 (1939) ............................................................................ 7

*United States v. Rahimi*,
   602 U.S. 680 (2024) ............................................................................ 4

**Statutes**

18 U.S.C. § 922(o) ...............................................................*passim*

18 U.S.C. § 924(c) ........................................................................... 11

18 U.S.C. § 924(c)(1)(B)(ii) ............................................................. 11

18 U.S.C. § 924(c)(1)(C) .................................................................. 11

26 U.S.C. § 5845(a) ......................................................................... 12

26 U.S.C. § 5845(b) ........................................................................... 2

Firearm Owners' Protection Act, Pub. L. No. 99-308, § 102, 100 Stat.
   449 (1986) ....................................................................................... 8

La. Stat. Ann. § 40:1751 ................................................................. 12

Miss. Code Ann. § 97-37-39 ............................................................ 12

iii

National Firearms Act of 1934, Pub. L. No. 73-474, § 2(a), 48 Stat. 1236, 1237 (1934) ............................................................................ 6

Gun Control Act of 1968, Pub. L. No. 90-618, § 5845(b), 82 Stat. 1213, 1231 (1968) ............................................................................ 7

USSG § 2K2.1(a)(1) (U.S. Sentencing Comm'n 2024) .......................... 12

**Other Authorities**

Aidan McCahill, *'They just killed my baby': Baton Rouge sees explosion of devices enabling pistols to fire as machine guns*, The Advocate (Mar. 21, 2025), https://tinyurl.com/4k9n2266 ................................. 10

Carol Skalnik Leff & Mark H. Leff, *The Politics of Ineffectiveness: Federal Firearms Legislation, 1919-38*, 455 Annals Am. Acad. Pol. & Soc. Sci. 48, 54 (1981) ............................................................. 5

Cong. Rsch. Serv., Federal Regulation of Firearms: A Report Prepared for the Use of the Senate Committee on the Judiciary 26 (May 1982) ............................................................................................ 8

David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 668 (1987) ................. 8

Ernesto Londoño & Glenn Thrush, *Inexpensive Add-on Spawns a New Era of Machine Guns*, N.Y. Times (Aug. 12, 2023), https://tinyurl.com/53h8mbjt ................................................................ 9

Franklin E. Zimring, *Firearms and Federal Law: The Gun Control Act of 1968*, 4 J. Legal Stud. 133, 137 (1975) .................................. 6, 7

H.R. Rep. No. 1780 ................................................................................. 6

Leigha Simonton, et al., *We're U.S. Attorneys for Texas. We Need Your Help Fighting This Rising Gun Violence Threat*, Austin American-Statesman (June 10, 2024), https://tinyurl.com/4y5xnw8r .............................................................. 14

Luis Prada, *The ATF Says It's Finally Tackling 3D-Printed Machine Gun Converters, or MCDs*, Vice (Sept. 10, 2024), https://tinyurl.com/3uwds3d8 ............................................................... 9

Makayla Evans, *'Recipe for disaster': ATF sees alarming increase in Glock switches in S.C.*, WMBF News (Mar. 1, 2024), https://tinyurl.com/3a2fphk2 ...............................................................10

National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means, 73d Cong. 5 (1934) ................................................6

Perry Stein, *Taking Aim at Devices that Change Legal Weapons to Illegal Machine Guns*, Washington Post (Sept. 6, 2024), https://tinyurl.com/yc4rrs3k.................................................................9

Press Release, U.S. Department of Justice Office of Justice Programs, *Justice Department Releases New Training to Focus on Detecting Machine Gun Conversion Devices* (Sept. 6, 2024) ...............................9

Press Release, U.S. Attorney's Office for the Eastern District of Louisiana, *Mississippi Man Guilty of Possession of Machine Guns* (April 24, 2025) .......................................................................14

Press Release, U.S. Attorney's Office for the Western District of North Carolina, *Operation Take Back America Leads To Criminal Charges Against Multiple Defendants For Firearms Offenses And Immigration-Related Violations* (April 29, 2025) ...............................14

Press Release, U.S. Attorney's Office for the Western District of Oklahoma, *44 Defendants Charged in First Year of "Project Switch Off" as Part of Crackdown on Illegal Machinegun Conversion Devices* (Dec. 12, 2024) ..................................................13

Press Release, U.S. Attorney's Office for the Western District of Oklahoma, *Machinegun Conversion Device Found in Baby Crib Lands Oklahoma City Man in Federal Prison for Nearly Two Years* (Apr. 25, 2025) .......................................................................13

Press Release, U.S. Attorney's Office for the Western District of Oklahoma, *United States Attorney and ATF Discuss Emerging Threat of Machinegun Conversion Devices* (Nov. 29, 2023)...........................13

Press Release, U.S. Attorney's Office for the Eastern District of Texas, *Harrison County Man Charged With Federal Firearms Violations* (Aug. 5, 2024) .................................................................14

Press Release, U.S. Attorney's Office for the Middle District of
    Alabama, *Five Men Charged Following Largest Single Seizure of
    Machinegun Conversion Devices in the Middle District of
    Alabama* (April 30, 2025) ................................................................. 14

Press Release, U.S. Attorney's Office for the Northern District of
    Texas, *Dallas Man Convicted of Selling Machinegun Conversion
    Devices* (April 1, 2025) ..................................................................... 14

Press Release, U.S. Attorney's Office for the Northern District of
    Texas, *Six Charged Federally in Glock Switch Takedown* (Jan. 13,
    2025) .................................................................................................. 14

Press Release, U.S. Attorney's Office for the Southern District of
    Texas, *Houston "Problem Gang" Member Heads to Prison for
    Possessing Machine Gun* (Sept. 27, 2024) ........................................ 14

Press Release, U.S. Attorney's Office for the Western District of
    Texas, *12 Arrested in San Antonio for Alleged Possession and
    Trafficking of Stolen Firearms, Machinegun Conversion Devices*
    (Aug. 28, 2024) ................................................................................. 14

Robert J. Spitzer, *Understanding Gun Law History after* Bruen*:
    Moving Forward by Looking Back*, 51 Fordham Urb. L.J. 57, 62
    (2023) ............................................................................................. 5, 7

Scott Glover & Curt Devine, *A Device That Can Turn A Semi-
    Automatic Weapon Into A Machine Gun In Moments Is Wreaking
    Havoc On American Streets*, CNN (Aug. 30, 2022),
    https://tinyurl.com/2p8mrmnc ......................................................... 10

United States Code Statistics, Bureau of Justice Statistics Federal
    Criminal Case Processing Statistics Tool,
    https://tinyurl.com/yydxnjfs ............................................................. 12

## INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Giffords Law Center to Prevent Gun Violence ("Giffords") is a non-profit policy organization serving lawmakers, advocates, legal professionals, gun violence survivors, and others who seek to reduce gun violence and improve the safety of their communities. Giffords researches, drafts, and defends laws, policies, and programs proven to effectively reduce gun violence. Its attorneys track and analyze firearm legislation, evaluate policy proposals regarding gun violence prevention, and participate in litigation nationwide. Giffords has provided courts with amicus assistance in many important cases affecting gun violence and the safety of our communities.

*Amicus curiae* Brady Center to Prevent Gun Violence ("Brady") is the nation's longest-standing nonpartisan, non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Brady works to free America from gun violence by passing and defending gun violence prevention laws, reforming the gun industry, and educating the public about responsible gun ownership. Brady has a substantial interest in ensuring that the Constitution is

---

[1] No counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution to fund the preparation or submission of this brief. No one other than the *amici curiae* made any monetary contribution to its preparation and submission.

1

construed to protect Americans' fundamental right to live. Brady has filed numerous briefs as amicus curiae in cases that implicate gun violence prevention.

## INTRODUCTION

Machineguns are extremely dangerous, fully-automatic weapons that can continuously fire rounds for as long as the shooter pulls the trigger. As a result, a shooter with a single machinegun can—in a matter of seconds—fire as many deadly bullets as are in the magazine. *See* 26 U.S.C. § 5845(b).

For nearly a century, Congress has responded to that particular danger by strictly regulating and, more recently, banning the possession of newly manufactured machineguns under Title 18, United States Code, Section 922(o). That statute—and the steep sentences that Congress and the Sentencing Commission have prescribed for possessing, using, or trafficking in machineguns—are vital tools for law enforcement to keep these dangerous weapons off the street and out of the hands of criminals. That imperative has become only more vital with the recent and widespread proliferation of cheap and easy-to-use machinegun conversion devices ("MCDs"). And the Supreme Court's seminal decision in *District of Columbia v. Heller*, 554 U.S. 570, 624 (2008), made clear that the Court was not casting doubt of any kind on the principle that the federal statutory restrictions on machine guns are consistent with the Second Amendment.

Notwithstanding the broad and longstanding consensus about the constitutionality of that statutory regime, the District Court dismissed the indictment against the defendant, which charged him with one count of violating Section 922(o). Ignoring the legislative history of that provision, and the salutary principles that led to its passage, the District Court concluded that the statute violated the defendant's Second Amendment rights.

That decision is wrong as a matter of law. And it will have severe public safety consequences. In particular, flying in the face of almost a century of congressional intent and public support, the District Court's decision would strip law enforcement of a powerful and widely used tool to combat the growing threat of violence from machineguns and MCDs.

"Like most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. Rather, the Second Amendment protects only those weapons "typically possessed by law-abiding citizens for lawful purposes"[2] and "in common use at the time." *Id.* at 625, 627 (citation omitted).[3] Clearly, machineguns are not in that category, as this Court correctly held in *Hollis v. Lynch*,

---

[2] While "lawful purposes" for weapons may encompass things like sporting uses, collection, and competitions, the scope of constitutional protection is narrower and centers on the individual right to lawful self-defense. *See Bevis v. City of Naperville*, 85 F.4th 1175, 1192-93 (7th Cir. 2023).

[3] *See also id.* at 627-28 (noting that the types of weapons protected under the Second Amendment may not always align with the types of weapons most useful in warfare).

827 F.3d 436, 446-51 (5th Cir. 2016). *See* Opening Brief for the United States ("Gov't Br.") at 12-15.

Moreover, as the Court noted in *Heller*, this common-sense limitation on the Second Amendment is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (citation omitted). The Supreme Court recently reaffirmed this established exception to the protections of the Second Amendment in both *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 21 (2022) and *United States v. Rahimi*, 602 U.S. 680, 697 (2024). Justice Kavanaugh in a concurring opinion explained that "the Second Amendment attaches only to weapons in common use because that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Rahimi*, 602 U.S. at 735 (Kavanaugh, J. concurring) (internal quotation marks omitted).

For those reasons, *Heller* flatly rejected the idea that regulating machineguns could be deemed unconstitutional and called such an interpretation of the caselaw "startling." *Id.* at 624; *see also* Gov't Br. at 20, n.13. Indeed, 90 years after Congress passed the National Firearms Act in response to gang violence and murders committed with machineguns, these weapons have become only more dangerous and lethal. The ban on possessing machineguns therefore remains a constitutional and essential tool for law enforcement to protect the public.

Because Section 922(o) does not implicate the plain text of the Second Amendment, and because it fits squarely within the Nation's longstanding history and tradition of prohibiting dangerous and unusual weapons, this Court should reverse.

## ARGUMENT

## I.   MACHINEGUNS ARE DANGEROUS AND UNUSUAL WEAPONS THAT POSE A PROFOUND THREAT TO PUBLIC SAFETY.

### A.   Congress Passed the National Firearms Act to Address High-Profile Gang Violence

Since the time of John Dillinger and the "Tommy gun," Congress has recognized that machineguns pose a particular danger to the public.  *See* Carol Skalnik Leff & Mark H. Leff, *The Politics of Ineffectiveness:  Federal Firearms Legislation, 1919-38*, 455 Annals Am. Acad. Pol. & Soc. Sci. 48, 54 (1981) (noting that the image and public fears of the "roving gangster" brandishing a machinegun served as "the essential backdrop for early New Deal gun control efforts").  The 1929 St. Valentine's Day Massacre highlighted this issue for the public when gangsters, dressed as policemen, used machineguns to kill seven rivals in one mass shooting.  Robert J. Spitzer, *Understanding Gun Law History after* Bruen*:  Moving Forward by Looking Back*, 51 Fordham Urb. L.J. 57, 62 (2023).  Motivated by "public concern with crime and criminals," which had narrowed its focus on "the machine-gun-toting interstate gangster," Congress passed the National Firearms Act

5

of 1934 ("NFA").   Franklin E. Zimring, *Firearms and Federal Law:  The Gun Control Act of 1968*, 4 J. Legal Stud. 133, 137 (1975).

The NFA established a mandatory licensing scheme for "importer[s], manufacturer[s], and dealer[s] in firearms . . . " and imposed a steep tax on machineguns.  National Firearms Act of 1934, Pub. L. No. 73-474, § 2(a), 48 Stat. 1236, 1237 (1934).   Speaking in support of the bill, Attorney General Homer Cummings described it as dealing "with one of the most serious aspects of the crime situation, namely, the armed underworld."  National Firearms Act:  Hearings on H.R. 9066 Before the H. Comm. on Ways & Means, 73d Cong. 5 (1934).  The Attorney General observed:

> [Machineguns] of course, ought never to be in the hands of any private individual.  There is not the slightest excuse for it, not the least in the world, and we must, if we are going to be successful in this effort to suppress crime in America, take these machine guns out of the hands of the criminal class.

*Id*. at 6.  The House Report mirrored these sentiments, concluding that "[t]he gangster as a law violator must be deprived of his most dangerous weapon, the machinegun."  H.R. Rep. No. 1780, at 107-08.

In other words, the premise of the NFA—and its underlying justification— was that machineguns were *not* in common use by law abiding citizens; rather, Congress clearly understood that they were dangerous and unusual weapons used primarily by criminals for unlawful purposes.

Many states recognized the same threat and took similar steps to regulate these dangerous weapons.  Between 1925 and 1934, at least 32 states enacted machinegun regulations.  Spitzer, at 64, n.38 (compiling laws).

It was, therefore, no surprise that the Supreme Court upheld the NFA against a Second Amendment challenge only five years later.  *United States v. Miller*, 307 U.S. 174, 183 (1939).

### B.     Congress Has Continued to Pass Laws to Address the Danger of Machineguns and to Respond to Technological Advances

In the 1960s, Congress again responded to the rise in crime rates by passing federal gun laws.  The high-profile assassinations of President John F. Kennedy, Reverend Martin Luther King, Jr., and Senator Robert Kennedy put additional enormous public pressure on Congress to do so.  Zimring, at 147-48.  One response was to broaden the definition of "machinegun" to include "any combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."  Gun Control Act of 1968, Pub. L. No. 90-618, § 5845(b), 82 Stat. 1213, 1231 (1968).  In other words, the ban no longer applied only to the finished product.  Instead, Congress intentionally covered M-2 conversion kits, "which could convert an ordinary surplus M-1 carbine into a fully automatic M-2 version" and were "widely available prior to 1968."  David T.

Hardy, *The Firearms Owners' Protection Act:  A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 668 (1987).

By the 1980s, gun manufacturers had figured out how to exploit loopholes in that statutory definition of "machinegun": they began to sell a single part that purchasers could use to convert a semiautomatic rifle into a weapon capable of fully automatic fire.  *Id.*  Because the manufacturers were selling only a single part, as opposed to a "combination of parts," the conversion part did not fall under the expanded definition of "machinegun."  *Id.* at 668-69.  A 1982 report by the Congressional Research Service warned of these "dangerous conversions," noting that "[o]ver an 18-month period, 20 percent of machine guns seized or purchased . . . by the ATF had been converted in this way."  Cong. Rsch. Serv., Federal Regulation of Firearms:  A Report Prepared for the Use of the Senate Committee on the Judiciary 26 (May 1982).

Congress's response came in the 1986 Firearm Owners' Protection Act, which banned civilian ownership of newly manufactured machineguns, and updated the definition of machinegun to include "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun."  Pub. L. No. 99-308, § 109(a), 100 Stat. 449, 460; *Id.* § 102, 100 Stat. at 453.  This new machinegun ban was codified in the criminal law under Title 18, United States Code, Section 922(o).

**C.   In Recent Years, There Has Been A Drastic Increase In Use of Machinegun Conversion Devices, Such As "Glock Switches," To Perpetrate Crimes**

Technological advances and the advent of 3-D printing have posed new challenges to public safety and law enforcement.   Small, easily accessible, machinegun conversion devices ("MCDs") have proliferated, and can now be purchased for as little as $200. *See* Ernesto Londoño & Glenn Thrush, *Inexpensive Add-on Spawns a New Era of Machine Guns*, N.Y. Times (Aug. 12, 2023), https://tinyurl.com/53h8mbjt.   Between 2018 and 2023, the ATF recovered more than 31,000 MCDs. Press Release, U.S. Department of Justice Office of Justice Programs, *Justice Department Releases New Training to Focus on Detecting Machine Gun Conversion Devices* (Sept. 6, 2024).   Indeed, MCDs are now the most frequently recovered type of illegal firearm.   Luis Prada, *The ATF Says It's Finally Tackling 3D-Printed Machine Gun Converters, or MCDs*, Vice (Sept. 10, 2024), https://tinyurl.com/3uwds3d8.   And the ATF Director explained in 2024 that these metal or plastic devices are primarily used by gang members and drug traffickers to make their weapons more deadly.   *See* Perry Stein, *Taking Aim at Devices that Change Legal Weapons to Illegal Machine Guns*, Washington Post (Sept. 6, 2024), https://tinyurl.com/yc4rrs3k.

One of the most commonly recovered type of MCD is the "Glock switch."   A "Glock switch" is an MCD that, in a matter of seconds, can convert a semiautomatic

Glock handgun into a fully automatic machinegun. According to ATF officials, that converted Glock weapon can fire up to 30 rounds in under two seconds, making them "incredibly dangerous." Makayla Evans, *'Recipe for disaster': ATF sees alarming increase in Glock switches in S.C.*, WMBF News (Mar. 1, 2024), https://tinyurl.com/3a2fphk2.

The rapid proliferation of MCDs has led—predictably—to a significant increase in the use of dangerous machineguns. According to statistics compiled by the gunfire detection company ShotSpotter, Inc., incidents of machinegun fire increased by approximately 1,400% between 2019 and 2021. *See* Scott Glover & Curt Devine, *A Device That Can Turn A Semi-Automatic Weapon Into A Machine Gun In Moments Is Wreaking Havoc On American Streets*, CNN (Aug. 30, 2022), https://tinyurl.com/2p8mrmnc. East Baton Rouge, Louisiana, is a stunning example: that municipality saw incidents increase from two in 2020 to 214 in 2024. Aidan McCahill, *'They just killed my baby': Baton Rouge sees explosion of devices enabling pistols to fire as machine guns*, The Advocate (Mar. 21, 2025), https://tinyurl.com/4k9n2266. One East Baton Rouge shooting caused the death of a three-year-old boy who was sleeping at home. *Id.* The fatal shot was one of 40 to strike the house. *Id.*

## II.    PROSECUTORS RELY ON § 922(o) TO SUCCESSFULLY PROSECUTE VIOLENT CRIMINALS AND TO PROTECT PUBLIC SAFETY.

### A.    Crimes Involving Machineguns Lead to Longer Sentences

Because of the obvious, indiscriminate, and widely recognized violence that machineguns can cause, Congress and the U.S. Sentencing Commission ("USSC") have been resolute that significantly longer sentences are justified for defendants who threaten public safety by using or possessing them.  For instance, 18 U.S.C. § 924(c) ordinarily provides a fixed, mandatory five-year prison term for defendants who use or carry a firearm during and in relation to any crime of violence or any drug trafficking crime, or who possess a firearm in furtherance of such an offense. But Congress has multiplied that to thirty years if the firearm is a "machinegun or destructive device, or is equipped with a firearm silencer or firearm muffler."  18 U.S.C. § 924(c)(1)(B)(ii).  Similarly, for second or subsequent convictions under the statute, the mandatory 25-year minimum penalty is increased to life in prison if the firearm that the defendant used or possessed is a machinegun.   18 U.S.C. § 924(c)(1)(C).

The USSC has followed Congress' lead by adopting several provisions of the U.S. Sentencing Guidelines ("USSG") that enhance sentences for defendants who commit crimes with machine guns.  Section 2K2.1, for example, establishes the offense levels for crimes involving the unlawful receipt, possession, or

transportation of firearms or ammunition. Although that guideline ordinarily creates a base offense level of 6 or 12 for such crimes, the base level jumps to 18 if the defendant received or possessed a "firearm that is described in 26 U.S.C. § 5845(a)," which includes "a machinegun." And, if the defendant has already sustained one or two "felony convictions of either a crime of violence or a controlled substance offense," the base level jumps from 20 to 22 (one conviction) or 24 to 26 (two convictions) simply because the weapon involved was a semiautomatic weapon or machine gun. *See* USSG § 2K2.1(a)(1) (U.S. Sentencing Comm'n 2024).

### B.    Prosecutions Under Section 922(o) Have Increased Significantly

Section 922(o) has become an increasingly important tool to combat the proliferation of machineguns and MCDs. For instance, 451 individuals were charged under that statute in 2023—almost twice the number (251) from the year before, and more than six times the 70 prosecutions in 2010. *See* United States Code Statistics, Bureau of Justice Statistics Federal Criminal Case Processing Statistics Tool, https://tinyurl.com/yydxnjfs.

That trend has continued. Indeed, over the past two years, U.S. Attorney's Offices[4] have announced major initiatives targeting illegal MCDs, and prosecutions under those initiatives are continuing:

---

[4] At least half of states, including Louisiana and Mississippi, now outlaw devices that covert pistols into machine guns. *See* La. Stat. Ann. § 40:1751 (West); *see* Miss. Code Ann. § 97-37-39 (West). The Mississippi law is named for Jeremy Malone, a

**Project Switch Off –** On November 23, 2023, the U.S. Attorney for the Western District of Oklahoma announced "Project Switch Off" to "target prosecutions related to these conversion devices and take illegal machineguns off the streets." Press Release, U.S. Attorney's Office for the Western District of Oklahoma, *United States Attorney and ATF Discuss Emerging Threat of Machinegun Conversion Devices* (Nov. 29, 2023). That Office charged 44 individuals with MCD-related offenses in the first year of the program. Press Release, U.S. Attorney's Office for the Western District of Oklahoma, *44 Defendants Charged in First Year of "Project Switch Off" as Part of Crackdown on Illegal Machinegun Conversion Devices* (Dec. 12, 2024). Just a few weeks ago, as part of "Project Switch Off," an individual was sentenced for possession of a machinegun after an MCD was found in a baby's crib. Press Release, U.S. Attorney's Office for the Western District of Oklahoma, *Machinegun Conversion Device Found in Baby Crib Lands Oklahoma City Man in Federal Prison for Nearly Two Years* (Apr. 25, 2025).

**Operation Kill Switch –** On June 10, 2024, U.S. Attorneys for the Eastern, Northern, Southern, and Western Districts of Texas announced "Operation Texas Kill Switch." In an op-ed, those four officials declared that "[w]ithout serious

---

Mississippi sheriff's deputy who was fatally shot with a machinegun during a traffic stop in January 2024.

intervention, it's only a matter of time until these devices wreak more havoc in our

communities."  Leigha Simonton, et al., *We're U.S. Attorneys for Texas. We Need*

*Your Help Fighting This Rising Gun Violence Threat*, Austin American-Statesman

(June 10, 2024), https://tinyurl.com/4y5xnw8r.  Since then, many individuals have

been charged and sentenced in those districts under Section 922(o) for possession of

such devices as part of this statewide initiative, including one individual who was

convicted just last month.[5]

Finally, President Trump's recently announced initiative, "**Operation Take**

**Back America**," has led to multiple prosecutions under Section 922(o).[6]

---

[5] *See, e.g.*, Press Release, U.S. Attorney's Office for the Northern District of Texas, *Dallas Man Convicted of Selling Machinegun Conversion Devices* (April 1, 2025); Press Release, U.S. Attorney's Office for the Northern District of Texas, *Six Charged Federally in Glock Switch Takedown* (Jan. 13, 2025); Press Release, U.S. Attorney's Office for the Southern District of Texas, *Houston "Problem Gang" Member Heads to Prison for Possessing Machine Gun* (Sept. 27, 2024); Press Release, U.S. Attorney's Office for the Western District of Texas, *12 Arrested in San Antonio for Alleged Possession and Trafficking of Stolen Firearms, Machinegun Conversion Devices* (Aug. 28, 2024); Press Release, U.S. Attorney's Office for the Eastern District of Texas, *Harrison County Man Charged With Federal Firearms Violations* (Aug. 5, 2024).

[6] *See, e.g.*, Press Release, U.S. Attorney's Office for the Western District of North Carolina, *Operation Take Back America Leads To Criminal Charges Against Multiple Defendants For Firearms Offenses And Immigration-Related Violations* (April 29, 2025); Press Release, U.S. Attorney's Office for the Middle District of Alabama, *Five Men Charged Following Largest Single Seizure of Machinegun Conversion Devices in the Middle District of Alabama* (April 30, 2025); Press Release, U.S. Attorney's Office for the Eastern District of Louisiana, *Mississippi Man Guilty of Possession of Machine Guns* (April 24, 2025).

These initiatives and results reflect the overwhelming consensus among law enforcement officials that the federal ban on the possession of machineguns is a powerful and successful tool to combat the growing threat of violence from machineguns and MCDs.

## CONCLUSION

The District Court's decision is wrong under the Second Amendment and poses a direct threat to public safety. The District Court's decision in this case flies in the face of Supreme Court precedent recognizing machineguns as dangerous and unusual weapons, as well as law enforcement's experience and expertise and the clear Congressional mandate that machineguns should not be available for civilians to possess and use. This Court should reverse.

Respectfully submitted,

/s/ *Michael Kim Krouse*
Michael Kim Krouse
Paul J. Fishman
Christopher Joseph
ARNOLD & PORTER
     KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
michael.krouse@arnoldporter.com
paul.fishman@arnoldporter.com
christopher.joseph@arnoldporter.com

Joanna McDonough
ARNOLD & PORTER

KAYE SCHOLER LLP
200 Clarendon Street, 53rd Floor
Boston, MA 02116
(617) 351-8050
joanna.mcdonough@arnoldporter.com

*Counsel for Amici Curiae*
*Giffords Law Center to Prevent Gun*
*Violence and Brady Center to Prevent Gun*
*Violence*

## CERTIFICATE OF SERVICE

I certify that on May 9, 2025, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Executed this May 9, 2025.

/s/ *Michael Kim Krouse*
Michael Kim Krouse

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,365 excluding the parts of the brief exempted by Fed. R. App. P. 32.

I further certify that this brief complies with the typeface and type-style requirements of Fed. R. App. 32(a)(5), (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Executed this May 9, 2025.


/s/ *Michael Kim Krouse*
Michael Kim Krouse